STATE ex rel. WITHERS v. STONESTREET, *Appellant.*

1. **Term of Office.**  A term of office uniformly designates a fixed and definite period of time.

2. **Offices and Officers:** TERM OF OFFICE: COAL OIL INSPECTOR: STATUTE.  Under sections 5838 and 5852, Revised Statutes of 1879, providing for the appointment of a coal oil inspector by the governor to hold office for two years and until his successor is appointed and qualified, and for filling vacancies for the remainder of such term, the term of office begins upon the day of the first appointment and continues for two years from and after that date, and the term of office of each successive appointee, whether

for a whole term or part of an unexpired term, will be regulated and controlled by the date fixed by the first appointment. It is beyond the power of the executive in making subsequent appointments to disregard the tenure of office first established, which is as binding on after-coming executives as if it had, in terms, been fixed by the legislature.

3. ———— : ———— : CONSTRUCTION. Contemporaneous and continuous uniform construction of a statute, in the absence of anything of a countervailing character, is of itself sufficient to settle its meaning in favor of such construction.

4. ———— : ———— : COAL OIL INSPECTOR. Where such appointee for two years held over because of the failure of the governor to appoint his successor, he was, from and after the expiration of the term for which he was appointed, a mere tenant at will who could be removed without notice and without charges preferred, at the pleasure of the executive, and the appointment of a successor at any time would accomplish his removal. The successor, in such case, would only hold for the balance of the two-year term dating from the expiration of the regular term of the person removed.

*Appeal from Jackson Circuit Court.*—HON. RICHARD H. FIELD, Judge.

REVERSED.

*Karnes, Holmes & Krauthoff* for appellant.

(1) Both by the terms of Revised Statutes, 1879, section 5838, and by the general rules of law in reference to the matter, the date of the first appointment fixed the beginning of the term of office. *Haight v. Love*, 39 N. J. Law, 476. The expression, "term of office," refers to the office, and not to the person holding it. The right to hold over does not extend the term, as applied to the office, but is merely a personal right. *Parmater v. State*, 102 Ind. 90, 95; *People v. Brundage*, 78 N. Y. 403, 407; *State v. Emerson*, 39 Mo. 80. "The expression, 'term of office,' uniformly designates a fixed and definite period of time." Anderson's Law Dict., p. 1023. "When the term is fixed in such a manner that

it applies to the office and not to the person, the term expires every fixed period, without regard to any confusion in the previous holding or to when the incumbent commenced service." *Jones v. State*, 112 Ind. 195, 196. "Nor is there any necessary incongruity in the running of the new term while the former incumbent is discharging the duties of the office." *Haight v. Love*, 39 N. J. Law, 476, 479, 480. The law fixed the term of office, and, where the term is thus fixed, it is certain that the governor's commission for a longer period will not extend the legal term. *Hench v. State*, 72 Ind. 297, 306; *State v. Chapin*, 110 Ind. 272, 276. Accordingly it was held that when an officer's two years' term expired in 1876, but no election of a successor was then had, so that the incumbent held over, and was elected as his own successor in 1877, he held only for the balance of the two years' term expiring in 1878. *People v. North*, 72 N. Y. 124, 133. (2) A failure to elect or appoint, at the time fixed therefor by law, makes the office vacant in the limited sense that the same is subject to be filled, although an incumbent is occupying it under his right to hold over. *Parcel v. State*, 110 Ind. 122, 125; *Jones v. State*, 112 Ind. 193, 197. (3) There is another aspect of the case in which it can well be said that by appointing Belt, the governor worked a removal from office of Keedy, and a vacancy declared to be consequent upon such removal by section 5852, Revised Statutes, 1879. Where the law invests the governor with power of appointment, this carries with it the right of removal subject only to the continuance of the fixed term mentioned in the statute. After the expiration of that term, under the hold-over clause, an officer holds merely at the discretion of the executive, subject to be removed by him. *Keenan v. Perry*, 24 Tex. 253, 258, 262. The mere appointment of a successor would, *per se*, be a removal of the former incumbent. *Ex parte Hennen*, 13 Pet. 230, 261. It is

a sound and necessary rule to regard the power of removal as incident to the power of appointment thereto. *Newsom v. Cocke*, 44 Miss. 352, 358, 359; *Williams v. Boughner*, 3 Coldw. 486. It is a rule universal in the United States, that, in the absence of constitutional or legislative restrictions, where no definite term of office is prescribed by law, the power of removal is incident to the power of appointment. *Patton v. Vaughan*, 39 Ark. 211, 214. "A removal from office may be express, or implied, by the appointment of another person to the same office." *Bowerbank v. Morris*, Wallace [U. S. Cir. Ct.] 118, 125. When an officer holds over, there is no method by which the office can be filled, which, if pursued, will not of itself operate as a removal of such hold-over officer. *People v. Cooper*, 57 How. Pr. 416, 426. Although there is a law which provides that removals may be made in a certain manner, it does not restrain or limit the power of removal when the same is vested in the governor as incident to the power to appoint. *People v. Hill*, 7 Cal. 97, 102; *Patton v. Vaughan*, 39 Ark. 215. Where the law provides a fixed term for the incumbency, the incidental power of removal is superseded only during the continuance of the term so fixed. *State ex rel. v. Police Commissioners*, 14 Mo. App. 297, 302.

*Downing & Hardin* for respondent.

(1) The case of *State ex rel. v. Smith*, 87 Mo. 158, is decisive of this case. All officers of this state hold over their prescribed terms until their successors are appointed or elected and qualified. Const. Mo., art. 14, sec. 5; R. S. 1879, sec. 3330. The act creating the office of coal oil inspector makes the same express provision. He is appointed for not only two years, but "until his successor is duly appointed and qualified." R. S. 1879, sec. 5838; Laws, 1885, p. 176, sec. 1. (2) The time he

holds over after the expiration of the two years is just as much a part of his term as any part of the two years preceding. *State ex rel. v. Smith*, 87 Mo. 158; *State ex rel. v. Thompson*, 38 Mo. 192; *State v. Ranson*, 73 Mo. 91; *Bank v. Hunt*, 72 Mo. 601; *State v. Lusk*, 18 Mo. 333; *Long v. Seay*, 72 Mo. 648; *State ex rel. v. Kurtzeborn*, 78 Mo. 99. Keedy's term never expired until Belt was appointed. Authorities *supra*. Where the law provides that an officer when appointed shall serve for two years and until his successor is appointed and qualified, in the event of a failure to appoint a successor, the incumbent continues to hold until his successor is appointed and qualified. *State v. Howe*, 25 Ohio St. 588; s. c., 18 Am. Rep. 321. And the time he holds over the designated period is as much a part of the term of his office as that which precedes the date at which the new appointment should be made. *State ex rel. v. Smith*, 87 Mo. 158; *State v. Harrison*, 113 Ind. 234; s. c., 3 Am. St. Rep. 667, and numerous citations; *People v. Whitman*, 10 Cal. 38; *Hubbard v. Crawford*, 19 Kan. 570; *Gosman v. State*, 106 Ind. 203. (3) The power to remove from office belongs to the power of appointment only when the term is not fixed by law, but the office is held at the pleasure of the authority making the appointment. *State ex rel. v. City of St. Louis*, 90 Mo. 19; *Collins v. Tracey*, 36 Tex. 546. Such power cannot therefore be exercised by the governor of a state whose power to remove is subject to statutory regulation. *Dubuc v. Voss*, 19 La. Ann. 210. Where the duration of the office is fixed by the law creating it, the incumbent can only be removed in the manner prescribed by the law. *Com. v. Sutherland*, 3 Serg. & R. 145; *Brown v. Grover*, 6 Bush. 1; *State ex rel. v. City of St. Louis*, *supra*. The cause for removal of an officer and the manner of his removal are provided in sections 3335-6-7, Revised Statutes, 1879, and that mode must be strictly followed. *Hudson v. Co. Court,*

28 Ark. 359 ; *Com. v. Sutherland*, 3 Serg. & R. 145; *Brown v. Grover*, 6 Bush. 1. (4) An office when once filled cannot be deemed vacant until the term expires, or until the death, removal, resignation or abandonment of the incumbent. *Johnston v. Wilson*, 2 N. H. 202 ; s. o., 9 Am. Decis. 50; *State v. Ranson*, 73 Mo. 94 ; *State v. Harrison*, 113 Ind. 234; s. o., 3 Am. St. Rep. 666. And if the governor appointed Stonestreet erroneously, supposing the office was vacant, his commission conferred no authority. *State v. McNeely*, 24 La. Ann. 19; *State v. Harrison*, 113 Ind. 234; ·s. o., 3 Am. St. Rep. 666 ; *State ex rel. v. McCann*, 88 Mo. 386. And Belt's title to the office could not be affected by the *ex parte* judgment of the governor that the official term had expired. The authority to fill vacancies confers upon the governor no judicial power. *State v. Seay*, 64 Mo. 89 ; *State v. Harrison, supra.* In the absence of proof that the office became vacant by due process of law, prior to the date of Stonestreet's commission, either by expiration of Belt's term of two years, or by his death, resignation or removal from office, it will be presumed that Stonestreet's appointment was erroneous. *State v. Bankston*, 23 La. Ann. 375. And the governor could not remove Belt from office for the purpose of creating a vacancy in order that he might appoint another to fill such vacancy. 48 Mo. 213 ; 64 Mo. 89 ; 88 Mo. 386; 113 Ind. 434 ; 33 Miss. 550 ; 1 Cranch, 162 ; 1 Scammon (Ill.) 79 ; 12 Kan. 562 ; 15 Ia. 553 ; 66 Ia. 199 ; 36 Texas, 546.

SHERWOOD, J.—On the twenty-first day of June, 1889, an information, filed in the Jackson circuit court by the prosecuting attorney, at the instance and on the relation of George W. Belt, which asserted the right of said Belt to the office of Inspector of Petroleum Oils within and for the City of Kansas for the term of two years from the twenty-sixth day of September, 1888, by virtue of a commission of that date, issued by the

governor, etc.; questioned the right of William M. Stonestreet, the present incumbent to that office, and charged that, since the twentieth day of June, 1889, he intruded himself into that office and usurped its rights, privileges, etc., without legal warrant, etc.

In the return of Stonestreet, he admitted the occupancy of the office, but claimed the office by virtue of the appointment of the governor, and a commission from him dated June 17, 1889, entitling the occupant to the office for the term of two years from and after the eighteenth day of June, 1889. He also alleged in his return, and proved this upon the trial, that, after the revision of 1879 went into effect, the first appointment was made and commission issued on the eighteenth day of June, 1879, for the term of two years commencing on said last-named day, and that the following-named persons had been successively appointed and commissioned on the days and for the terms hereinafter stated:

On June 18, 1879, James A. Keel, for a term expiring June 18, 1881.

On June 20, 1881, Frank K. Tutt, for a term expiring June 18, 1883.

On June 12, 1883, Frank K. Tutt, for a term expiring June 18, 1885.

On June 4, 1885, Joseph W. Keedy, for a term expiring June 18, 1887.

It was further alleged in the return, and proved on the trial, that no appointment was made for the term commencing June 18, 1887, but that Keedy remained in office until September 26, 1888, when the then governor of the state appointed George W. Belt thereto and undertook to issue to him a commission for two years, expiring September 26, 1890, and thereby removed Keedy from office. The return also alleged that, under the law, the term of office, to which said Belt was appointed, expired June 18, 1889, and that his commission for a period beyond that date was unauthorized.

The reply of the relator put in issue the allegations of the return, and averred that, under the statute, the term of office of an inspector was for two years absolutely, and until a successor of an incumbent is duly appointed and qualified, and that consequently Belt was properly appointed for two years from and after September 26, 1888.

The defendant also introduced in evidence the commission of Joseph W. Keedy as follows:

"The State of Missouri.

"To all who shall see these presents, greeting:

"Know ye, that reposing special confidence in the integrity and abilities of Joseph W. Keedy, I, John S. Marmaduke, Governor of the State of Missouri, on behalf and in the name thereof, do hereby appoint and commission him Inspector of Petroleum Oils within and for the City of Kansas, of the state of Missouri, and do authorize him to discharge, according to law, the duties of said office, and to hold and to enjoy the same, with all the powers, privileges and emoluments thereto appertaining for a term of two years from and after the eighteenth day of June, eighteen hundred and eighty-five. In testimony whereof I have hereunto set my hand and caused to be affixed the great seal of the state of Missouri. Done at the City of Jefferson, this twelfth day of June, in the year of our Lord one thousand, eight hundred and eighty-five, of the independence of the United States the one hundred and ninth, and of the state of Missouri the sixty-fifth.

"JOHN S. MARMADUKE.

"By the Governor,

"(Seal.) MICHAEL K. McGRATH,

"Secretary of State."

Next the commission of William M. Stonestreet as follows:

"The State of Missouri.

"To all who shall see these presents, greeting:

"Know ye, that reposing special trust and confidence in the integrity and abilities of William M. Stonestreet, I, David R. Francis, Governor of the State of Missouri, on behalf and in the name thereof, do hereby appoint and commission him Inspector of Oils within and for the City of Kansas of the state of Missouri, and do authorize him to discharge, according to law, the duties of said office and to hold and enjoy the same, with all the powers, privileges and emoluments thereto appertaining, for a term of two years from and after the eighteenth day of June, eighteen hundred and eighty-nine. In testimony whereof, I hereunto set my hand and cause to be affixed the great seal of the state of Missouri. Done at the City of Jefferson, this seventh day of June, in the year of our Lord, one thousand, eight hundred and eighty-nine.

"DAVID R. FRANCIS.

"By the Governor,

"(Seal.)   A. A. LESUEUR,
"Secretary of State."

Under objection of defendant, the state was then permitted to introduce in evidence the commission of relator:

"The State of Missouri.

"To all who shall see these presents, greeting: ·

"Know ye, that reposing special trust and confidence in the integrity and abilities of George W. Belt, I, Albert P. Morehouse, Governor of the State of Missouri, on behalf and in the name thereof, do hereby appoint and commission him Inspector of Petroleum Oils within and for the City of Kansas, of the state of Missouri, and do authorize him to discharge, according to law, the duties of said office, and to hold and enjoy the same with all the powers, privileges and emoluments

thereto appertaining, for a term of two years. In testimony whereof, I have hereunto set my hand and caused to be affixed the great seal of the state of Missouri. Done at the City of Jefferson, this twenty-sixth day of September, in the year of our Lord, one thousand, eight, hundred and eighty-eight.

"ALBERT P. MOREHOUSE.

"By the Governor :
   "( Seal.)          MICHAEL K. McGRATH,
                              "Secretary of State."

It was also shown by the evidence adduced, that each prior and present occupant of the office in question was duly qualified, and had entered upon and discharged the duties of his office in accordance with his commission.

The foregoing gives the substance of the evidence and issues in this cause. The trial court found the issues for the state, and rendered judgment of ouster accordingly, to reverse which ruling, the defendant appeals to this court.

The statutory provisions, directly applicable to this cause, are these :

"Sec. 5838.  The governor shall appoint, for each of the cities of St. Louis, Hannibal, St. Joseph and Kansas City, and for such other cities and towns as shall, by the authorities thereof, petition to him therefor, an inspector of petroleum oils, kerosene, gasoline, or any product of petroleum, by whatever name known, which may be manufactured, offered for sale, or sold for consumption for illuminating purposes, within the state. Each inspector shall be a resident of the city or town for which he is appointed, hold his office for two years from the date of his appointment, and until his successor is duly appointed and qualified, and shall, at his own expense, provide himself with the necessary instruments and apparatus for testing, gauging and branding the oils and fluids by him inspected.

" Sec. 5852. Whenever any vacancy occurs under this article by death, resignation, removal from office or otherwise, the mayor of the city, where the vacancy happens, shall immediately certify the same to the governor, who shall appoint and commission his successor for the remainder of the term of office as herein provided; and in all cases where an inspector shall be charged, by indictment or information, for a violation of the duties of his office, as hereinbefore provided, the governor may suspend him from the duties of his office, and appoint another one to fill such vacancy during the time such inspector shall remain suspended."

The slight changes made in the foregoing sections by the Laws of 1885 are unimportant in the present controversy.

Two questions are thus presented by the record : *First.* Is the office of inspector of oils one which begins at a date and ends at a date corresponding to the date first fixed by the executive, when making his first appointment to that office under the revision of 1879, or does the term of that office, though its express limit of tenure is only two years, have no fixed period as to when that term shall begin or end, save the pleasure of the executive ? *Second.* What was the force and effect of Belt's appointment, considered with reference to Keedy's official *status ?*

I. As to the first question : The phrase " term of office," in ordinary parlance, means the fixed period of time for which the office may be held. And we have a statutory rule for the construction of statutes, requiring that, in construing statutes, "words and phrases" shall be taken in their plain, ordinary or usual sense," except that "technical words and phrases, having a peculiar and appropriate meaning in law, shall be understood according to their technical import." R. S. 1879, sec. 3126.

Going to the standards of our language, we find that *a term* means "the time for which anything lasts; any limited time; the term of life." Webster's Dict. And turning to the authorities, they announce that "the expression, term of office, uniformly designates a fixed and definite period of time." Anderson's Law Dict. 1023; *People v. Brundage*, 78 N. Y. 403, 407; *Baker, Governor v. Kirk*, 33 Ind, 517. So that whether we take the phrase, "term of office," in its ordinary or popular sense, or in its technical import, it means one and the same thing: "A fixed and definite period of time."

Of course, every such period of time, in order to be "fixed and definite," must have a point of beginning and a point of termination equally fixed and definite. Now, if it can be ascertained *when* the "term of office" of the first appointee of the governor under the revision of 1879 began, it would seem not difficult to reach a correct conclusion as to when the terms of office of the successive and subsequent appointees of the executive began and ended.

The statute is silent on the point as to the beginning of the first appointee's term, and the reason for this is most obvious, since, the power of appointment being lodged in the executive, it belonged to him in fact, if not in law, to determine the time of the inception of the actual official term of such appointee; the duration of that term was already fixed by law. But if the legislature, being possessed of the power, *had* fixed the date of the commencement of the first appointee's official term, it would not be questioned that such initial point, being once made sure and steadfast, would recur at every corresponding period of two years. This must be true, or else the premises from which this conclusion is drawn, sustained as it is by authority, that a "term of office uniformly designates a fixed and definite period of time," must be false. As the legislature did not fix the

date when the official term of the first appointee under the new law was to begin, this date was necessarily left to be fixed by the appointing power ; but, *when* fixed, the determination thus reached must have been as effectual in all its incidents and consequences as if previously made by the legislature. This also must be true, or else it must be true that the executive was incapable of fixing such initial point, and that, therefore, *it never was fixed*, which is an impossible, as well as an absurd, supposition.

This reasoning leads to this result : That the *date* of the appointment, first made by the governor for the office in question, initiated the official term of the first appointee, and that all subsequent appointments necessarily had reference to such initial period, and, so far as lawful, conformed thereto. This conclusion is well sustained by authority. *Attorney General ex rel. v. Love*, 39 N. J. L. 476, is decisive of this point. And the general rule is elsewhere recognized that when no time is mentioned in the law, from which the term shall commence, it must begin to run from the date of election. *State ex rel. v. Constable*, 7 Ohio, 7 ; *Marshall v. Harwood*, 5 Md. 423 ; *Hughes v. Buckingham*, 5 S. & M. 632.

These last, though *election* cases, furnish a strong analogous support to the view already expressed, showing as they do, the urgent necessity felt of having some determinate period at which and from which official terms shall begin. The law favors uniformity, but uniformity cannot be obtained except by the establishment of an inflexible rule. And the course in the office of the executive in regard to appointment of the first appointee, the language of his commission, and the language of all subsequent commissions, except that of relator, fixing the beginning of such official term at June 18, biennially, as the period from which to reckon the duration of such term, affords a contemporaneous, as well as a continuous, exposition of the meaning of the

law, and of the intention of its makers, that is not without value in the present investigation. Such contemporaneous and continuous construction, in the absence of anything of a countervailing character, should be sufficient *per se* to settle the controversy on the point in hand adversely to the relator.

Under statutory provisions substantially identical with those under discussion, it has been held that the true rule was to construe the word "term" as designating consecutive periods of six years, following each other in regular order, the one commencing where the other ends, and treating the incumbent appointed in any such period as the incumbent in the particular term or period to which his appointment relates, his office expiring with the expiration of his term. *People ex rel. v. McClare*, 99 N. Y. 83, 93. The statute there was like section 5838, providing that the appointee should hold for a certain number of years and until his successor should be appointed and qualified, and also like section 5832, providing that in case of vacancy, an appointment should occur for the residue of the term.

The ruling just mentioned is in entire conformity to the authorities and views heretofore cited and expressed as to the date of the commencement and the uniform duration of the successive terms of office of the different and successive appointees under the law now being discussed. And, upon the very face of section 5838 aforesaid, there appears a legislative command that the terms of office of each appointee is to last two years "*from the date of his appointment;*" but the legislature was cognizant that appointments might fail to be made at the proper time; that deaths, resignations, failure to accept, qualify, etc., might occur, and so made provision in section 5838 that an appointee should hold office not only for his official term of two years, but until his successor should be duly appointed and qualified. And section 5852 exhibits the same marks of legislative

solicitude that uniformity should prevail as to the duration of the official term of the inspector; for that section makes special provision, in case of vacancy, that the governor, upon being informed thereof, "shall appoint and commission his successor *for the remainder of the term of office as therein provided.*" *What term of office?* Evidently the term of two years mentioned in section 5838, beginning at the date of the original appointee's appointment.

Section 5852 which, under all known rules of construction, is to be read in connection with section 5838, forbids the idea that an appointment, made to fill a vacancy under the former section, extend beyond "the remainder of the term of office as herein provided." This obvious construction of the two sections is at war with the theory of the relator that each appointment is an independent one, creating an independent term of office, with a duration of two years, and without a particle of reference to antecedent appointments or to uniformity of official tenure. That contention cannot, therefore, prevail. Should it do so, it would, in effect, expunge from section 5852, as meaningless, the words in that section relating to the appointing and commissioning of a successor for the remainder of the term of office.

The consideration and comparison of the two sections now before us are alone sufficient to rule this case upon the point now under discussion, without help from the authorities, which the diligence of the counsel for the defendant has so carefully selected.

It will therefore be ruled in answer to the first question propounded: That, inasmuch as the term of office of the first appointee began on the eighteenth day of June, 1879, and continued for two years from and after that date, that the term of office of each successive appointee, whether for a whole term, or for the part of an unexpired term, was regulated and controlled by the date

fixed by the first appointment; and that it was beyond the power of the executive, when making subsequent appointments, to ignore or disregard the tenure of office thus first established. It was as binding upon after-coming executives, as if in terms it had been so fixed by the legislature. And it may be said, in concluding this paragraph, that the sections of the statutes, which have been discussed, are by no means peculiar in providing that a coal oil inspector shall hold his office until his successor is elected and qualified. This provision is one common *both* to our organic and statutory law. Const. of Mo., art. 14, sec. 5; R. S. 1879, sec. 5330.

II. Now as to the second question propounded: What was the force and effect of Belt's appointment, considered with reference to his own and Keedy's official *status?* The remarks, heretofore made, show that Keedy's term of office must have expired on June 18, 1887; but as his successor had not been appointed, of course he held over until that occurrence took place, which was when Belt was appointed, September 26, 1888. But Belt's appointment, for reasons already given, was only effective for the residue of the term of office which had never been previously filled by appointment, and which began on the expiration of Keedy's term of office, to-wit, on the eighteenth day of June, 1887. This being the case, Belt's term of office was only for the remainder of a term of office which had never been fulfilled, to-wit, the time intervening between September 26, 1888, and June 18, 1889. Keedy had no term of office, in any proper sense of that expression, after June 18, 1887. Upon and after that date, he was a mere *locum tenens;* a tenant at will, who could be removed without notice, and without charges preferred, at the pleasure of the executive, and the appointment of Belt accomplished his removal. *Ex parte Hennen*, 13 Pet. 230, 261.

The appointment of a person appointed, as was Belt, does not fall within the purview of section 5852. There was no vacancy here within the meaning of that section. That section contemplates cases of vacancy where it becomes necessary to notify the governor thereof ; but, certainly, no such notification can be necessary when the archives at the seat of government apprise the executive of the fact that one heretofore appointed, but whose term of office has expired, still retains official position, in order to subserve the ends contemplated, both by the organic and statutory law. The rule is, that where the duration of office is fixed by law, that the incumbent can only be removed in conformity to statutory regulation. *Ex parte Hennen*, 13 Pet. 230, 261 ; *State ex rel. Dennison v. City of St. Louis*, 90 Mo. 19.

But this rule, manifestly, has no application to a case where the term of office of the incumbent *has expired*, and where he is simply holding over at the pleasure of the executive. In such case, the power of removal is incident to the power of appointment, without cause shown, or notice given .or hearing had. *Ex parte Hennen, supra ; Field v. Commonwealth*, 32 Pa. St. 478 ; *Keenan v. Perry*, 24 Tex. 253, and cas. cit. In such case, also, there is no restriction upon the power of the executive, such as there would be, were he to attempt the removal of an incumbent, the duration of whose term of office is fixed by law, which term has not expired. In the latter case, the manner provided by law would have to be pursued before a removal could be effected. R. S. 1879, secs. 3335, *et seq.*

But, although there was not a vacancy in the strict sense of the expression, yet, in a limited sense, that the same is subject to be filled at the pleasure of the executive, there is a vacancy within the intendment of the law so far as concerns the exercise of the appointing power ; and the mere physical occupancy of the office cannot obstruct the exercise of such power. *Parcel v.*

*State*, 110 Ind. 122; *Jones v. State*, 112 Ind. 193; *State ex rel v. Harrison*, 113 Ind. 434; s. c., 3 Am. St. Rep. 663. The case of *State ex rel. v. Smith*, 87 Mo. 158, has been cited as decisive of this one, but this is a mistake. The real point in judgment there is, that, if any officer holds over, his compensation is to be regulated in conformity to his regular official term; that his compensation is not to be increased in consequence of an increase in the salary which only applies to the term of his successor, and that, so far as concerns his compensation, he is to be considered as in of his regular official term.

As the result of the foregoing views, the relator having shown no title to the office, and the right of the defendant thereto being satisfactorily established, we reverse the judgment. All concur, except BARCLAY, J., who dissents.