THE STATE *ex rel.* ATTORNEY GENERAL V. THOMAS.

1. **St. Louis City Ordinance:** VACANCY IN ELECTIVE OFFICE. Ordinance 1089 of the city of St. Louis, which authorizes the mayor to order a special election to fill a vacancy occurring in any elective office more than six months before the expiration of its term, is valid.

2. ——— : ———. Said ordinance authorizes an election to fill a vacancy in the office of city marshal where there was not a valid election at the expiration of the regular term, and the incumbent holds over after the expiration of his term.

3. **Office, What Constitutes Vacancy in.** An office is vacant within legal intendment and for all purposes of election, or appointment as well, when the official term of the occupant has expired, as in case of his death, resignation or removal, provided provision is made by law for filling the office by such appointment or election. ( *State, etc., v. Lusk,* 18 Mo. 333, *overruled.*)

## Quo Warranto.

DEMURRER TO ANSWER OVERRULED.

*W. C. Marshall* for relator.

(1) The special election for city marshal, held on March 4, 1890, was void. Section 1089, article 1, chapter 28, revised ordinances of St. Louis, attempts to cure a *casus omissus* in the charter, and is in effect an amendment to the charter. It was passed by the municipal assembly, and was never submitted to a vote of the people or adopted by them, as is required by section 19, of article 21, of the charter, and by section 22, of article 9, of the constitution of Missouri. (2) A vacancy in a public office can occur only by the death, resignation, abandonment or ouster of the incumbent. A failure to elect a successor at the proper time does not create a vacancy. *State ex rel. v. Jenkins,* 43 Mo. 261 ; *State v. McKee,* 69 Mo. 504 ; *Walker v. Ferrel,* 58 Ga. 512 ; *State v. Lusk,* 18 Mo. 333. (3) A failure of the person elected to qualify (either from death, inability, unwillingness, neglect, refusal, insanity, crime or ineligibility) does not create a vacancy. *Commonwealth v. Hanley,* 9 Pa. St. 513 ; *State ex rel. v. Lusk,* 18 Mo. 337 ; *State ex rel. v. Thompson,* 38 Mo. 193 ; *State ex rel. v. Seay,* 64 Mo. 89 ; *Bank v. Hunt,* 72 Mo. 601 ; *State ex rel. v. Ransom,* 73 Mo. 91 ; *State ex rel. v. Smith,* 87 Mo. 160 ; *State ex rel. v. Baird,* 47 Mo. 301 ; *State ex rel. v. Boone,* 50 Mo. 317 ; *State ex rel. v. Boecker,* 56 Mo. 17 ; *Thompson v. State,* 37 Miss. 518 ; *Placer County*

*v. Dickerson*, 45 Cal. 12; *State v. Daniel*, 6 Jones (N. C.) 444; *Sparks v. Bank*, 9 Am. Law Reg. (N. S.) 365; *People v. Lord*, 9 Mich. 231; *People v. Van Horne*, 18 Wend. 515; *Stewart v. State*, 4 Ind. 396; *People v. Tilton*, 38 Cal. 614; McCrary on Elections, [3 Ed.] sec. 314, p. 215. (4) The order of the mayor of March 10, 1890, recognizing Thomas was without authority. It was doing what this court had no power to do, even by *mandamus* until the title of the incumbent had been tried by *quo warranto*. McCrary on Elections, sec. 369, *et seq*. (5) The action of Thomas in laying violent hands on Neiser, and throwing him bodily out of his office, was revolutionary and unprecedented, and ought not to be tolerated. His remedy when Neiser refused to surrender the office was by *quo warranto*. McCrary on Elections, sec. 362, *et seq*. (6) A writ of *quo warranto* is a writ of right, and will issue upon the demand of the proper officer as a matter of course. *State ex rel. v. Ins. Co.*, 8 Mo. 330; *State ex rel. v. Stone*, 25 Mo. 555. (7) The supreme court has original jurisdiction to issue writs of *quo warranto*. *State ex rel. v. Stewart*, 32 Mo. 380–382; *State ex rel. v. Vail*, 53 Mo. 97; *State ex rel. v. Lawrence*, 38 Mo. 535. (8) When there is no question of fact to be tried, but the case, as here, is purely a question of law, this court will grant the writ. *State ex rel. v. Stewart*, 32 Mo. 382; *State ex rel. v. Francis*, 88 Mo. 557; *State ex rel. v. Rose*, 84 Mo. 202. (9) And the supreme court will entertain jurisdiction of an information at the relation of a private person under proper circumstances, and when special reasons are shown for beginning such proceedings in that court. *State ex rel. v. Stewart*, 32 Mo. 382; *State ex rel. v. Vail*, 53 Mo. 97; *State ex rel. v. Townsley*, 56 Mo. 107

*Leverett Bell* for respondent

(1) The special election was authorized by section 1089 of the revised ordinance of 1887. The charter

(2 R. S. 1889, p. 2098, par. 8) is sufficient authority to support said section 1089. The latter section is not an amendment of the charter and no submission of the matter to the voters was necessary, said section being valid as an ordinance provision. (2) This case falls within that of *State v. Stonestreet*, 99 Mo. 361, and the respondent is entitled to the office. The decision in *State v. Stonestreet* is the last expression of this court on the subject of what constitutes a vacancy in an office. It overrules *State v. Lusk*, 18 Mo. 333, on the same subject. In the *Lusk case*, decided in 1853, there was a strong dissenting opinion by Judge Scott, supporting the view adopted by the court thirty-six years latter in the *Stonestreet case*.

SHERWOOD, J.—I. This, an original proceeding by *quo warranto*, has been instituted in this court, to question the validity of the special election, held March 4, 1890, at which respondent claims to have been elected marshal of the city of St. Louis, and by virtue of which he has been duly commissioned and qualified and entered upon the discharge of the duties of that office.

The contention of the relator on this point is twofold :

*First.* That ordinance 1089 of the city of St. Louis, under which the special election aforesaid was held, was unauthorized by the provisions of the charter, and, therefore, void, and because :

*Second.* There was no *vacancy* in the office of city marshal at the time of calling, nor at the time of holding, the special election, and consequently respondent was not elected, even granting the validity of the ordinance already referred to, which provides that : " A vacancy occurring in any elective office more than six months before the expiration of the term thereof shall be filled by a special election, which shall be immediately ordered by the mayor for the purpose, and

five days' public notice of the time and place of holding any special election shall be given."

This ordinance, it seems, was passed in 1876, the year of the adoption of the charter. Relator contends that there is only *one* provision in the charter of the city in relation to filling elective offices at times other than regular elections, and that is article 4, section 13, thereof, providing that : "In case any elective office shall become vacant within six months from the expiration of the time for which its incumbent shall have been elected, then the council shall, by election, fill the vacancy for the unexpired term," etc., and consequently he claims that the ordinance heretofore copied is not only unauthorized, but an attempt thereby to supply a *casus omissus* in the charter, which, under the provisions of section 19 of article 16 of that instrument, can only be supplied by an amendment thereof. This contention, however, cannot stand in the face of the twenty-sixth section of article 13 of the charter, and the eighth clause thereof, providing that : "The mayor and assembly shall have power within the city, by ordinance not inconsistent with the constitution or any law of this state, or of this charter : * * * To regulate and provide for the election or appointment of city officers required by this charter, or authorized by ordinance, and provide for their suspension or removal," etc.

The object of this charter provision is quite plain ; it bestows, as its language imports, sufficient power upon the law-making authorities of the city to make all necessary rules or laws in regard to municipal elections, whether those elections be general or special ; whether occurring before the expiration of any official term of office, and, therefore, *anticipatory* in their nature, or when occurring *after* some regular election has failed of its purpose by reason of one or more of the various vicissitudes incident to, and frequently attendant on, such events. In short, the authority, thus granted to the legislative department of the city, is as broad in the

limited sphere of its operation, as is a similar power bestowed by the constitution of the United States upon congress, "to regulate commerce with foreign nations," etc., respecting which Chief Justice MARSHALL said: "It is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *Gibbons v. Ogden*, 9 Wheat., *loc. cit.* 196.

So here, the authority thus delegated to the legislative branch of the city government, to pass all necessary ordinances in furtherance of the object mentioned, is *plenary* in its character; it is the power to prescribe rules by which city elections are to be governed; a power which recognizes only such limitations as are marked out by the constitution or laws of this state or by some other provision of the charter. Nor is the power thus conferred, in the exercise of which, the ordinance under discussion was passed, at all inconsistent with section 13 of article 4 of the charter already quoted. That section relates to a different exigency; to a different election; to an unexpired term of office of a different duration to that provided for in ordinance 1089. Moreover, the answer of respondent alleges that which the demurrer admits to be a fact, that the ordinance aforesaid was passed in 1876, the year of the adoption of the city charter, and, therefore, may be regarded as a contemporaneous exposition and construction of the power of the municipal legislature to pass such an ordinance; a circumstance not unworthy of consideration, as an early expression of what the framers of the charter, and the people who voted to adopt it, meant by the eighth clause of section 26, *supra.*

II. Passing now to the second head of relator's contention: Was there a vacancy in the office of marshal when the special election of March 4, 1890, was held? The information of the relator states that the

term of office of the marshal is for the period of four years, and until his successor shall be duly elected and qualified ; but for the very reason that the occupant may maintain it until, etc., it is strenuously insisted that there was no *vacancy* in the office of marshal because there was an incumbent holding over after his term of office had expired, and this because no valid election had been held prior to the special one of March 4, 1890, under which respondent claims.   If the mere fact of *physical occupancy* could prevent an office from becoming vacant, then it is easy to see that no election, whether occurring *prior* to the expiration of the official term or *subsequent* thereto, could be effectual in securing a successor to the then occupant, because there would be no vacancy ; that is, the office would be *actually occupied*.  This argument, of course, proves too much.   An office is vacant within legal intendment, and for all purposes of election or appointment, as well when the official term of the occupant has expired, as in case of his death, resignation or removal.  *Johnston v. Wilson*, 2 N. H. 202.

The fact that the incumbent remains clothed with official authority, in furtherance of a wise provision of public policy and of public law, cannot enlarge the boundaries of his official term, or arrest the operation of the power of appointment or of election.   Of course, these remarks are subject to the conditions that the law has provided for filling the office in one of the modes mentioned, and that, therefore, the election or appointment cannot be classed as *voluntary*.

The case of *State v. Jenkins*, 43 Mo. 261, cited by relator, aptly illustrates this point ; for there the term of Vincent, under constitutional provisions, expired in January, 1867, but, though provision was made for an election in 1866, none was held, and this omission was attempted to be supplied by an election in 1868, at which McHenry claimed to have been elected, and respecting this, BLISS, J., said :   ''In relation to relator's

second claim, that the omission to hold an election in 1866 can be supplied by one in 1868, we can only say that *it is a valid one if the law provides for any such election.* * * * As the law makes no provision for the election of clerks in 1868, such election is void and of no effect. This position has never been questioned." The case just cited, while it plainly decides the point mentioned, necessarily decides, also, that there is a *vacancy in an office notwithstanding there is a hold-over incumbent,* and a vacancy which may be filled, *provided there is a law for the election of his successor.* As already pointed out there is no such impediment in the case before us. Ordinance 1089 is adequate and ample.

*State v. Lusk,* 18 Mo. 333, is much relied on by relator ; but the position taken by the majority in that case is at variance with the views heretofore expressed, and was ably combatted by Judge Scott in a dissenting opinion of great vigor, which more than answers the unsatisfactory reasoning of the majority. Besides, *Lusk's case* is virtually overruled by *State v. Seay,* 64 Mo. 89, wherein it was ruled that McCord having been elected and having qualified, but *having died two days before* Gale's term ended or his own commenced, that Gale's continuing to hold over under the constitutional provision *did not prevent the happening of a vacancy,* which the governor was authorized to have filled through the medium of a special election.

Moreover, the recent case of *State v. Stonestreet,* 99 Mo. 361, fully sustains the position heretofore taken as to there being a vacancy in the office of marshal upon the occurrence of the special election aforesaid ; and it is only necessary to refer to the discussion on this point, to that case.

As the result of the above views, the answer of the respondent must be adjudged sufficient in law, the demurrer be overruled and judgment accordingly.

All concur, but Barclay, J., absent.