State ex inf. v. Williams.

THE STATE ex inf. ELLIOTT W. MAJOR, Attorney-General, ex rel. JESSE W. SIKES, v. W. W. WILLIAMS.

In Banc, July 9, 1909.

1. APPOINTMENT: Confirmation at Special Session. The confirmation by the Senate of an appointment made by the Governor is not a legislative act, and can therefore be made at a special session of the General Assembly. When that body is lawfully convened for legislative purposes, it has a right to act for administrative purposes, even without mention of such purposes in the Governor's call for a special session.

2. ———: Term: Beginning and Ending. Where the Legislature by a statute gives the Governor the power to fix the beginning of a term of office, and requires the appointment to be confirmed by the Senate, it necessarily gives him the power to fix the end of the term.

3. ———: ———: ———: Four Years. Where the act provided that "within thirty days after the passage of this act the Governor, with the advice and consent of the Senate, shall appoint a competent person to serve as factory inspector, who shall hold office for four years from the date of his appointment, or until his successor is appointed and qualified," and the act went into effect May 17th, the Governor had the right to fix the beginning of the term at May 18th, and that term expired on May 18th four years later, although the appointment was not confirmed by the Senate until the next regular session of the Legislature thereafter.

4. ———: ———: ———: ———: Resignation: New Appointment for Four Years. Where the term was fixed at four years by the Act of 1901, and the Governor fixed the time of its beginning at May 18th, 1901, every term thereafter began on May 18th. And where the Governor in 1905 appointed Hiller for a term ending May 13, 1909, and Hiller thereafter on March 20, 1907, resigned, and relator was on May 6, 1907, appointed for a term ending May 13, 1909, and that appointment was confirmed by the Senate at special session in 1907, relator's term expired in 1909, and was not by operation of the statute extended for four years from 1907. Nor could the Governor extend relator's term to four years from August 11, 1907, by a new appointment for four years from that date, under an amendment to the statute in 1907 which created no new office, where the appointment was not confirmed by the Senate at its next session.

State ex inf. v. Williams.

5. ——: ——: ——: ——: **Beyond End of Term.** And the words "until his successor is appointed and qualified" did not extend the first appointee's term or the term of any subsequent appointee beyond its end on May 18th. The law does not contemplate that there is a new beginning and ending of the term by each appointment, but the term becomes fixed by the first appointment under the act.

6. ——: ——: ——: **Qualifying: Confirmation by Senate.** To qualify for an office, to be filled by the appointment of the Governor, "with the advice and consent of the Senate," does not include, to begin the term, confirmation by the Senate. The term begins at the time first designated by the Governor as its beginning, and the appointee's tenure lasts until the appointment is rejected by the Senate, or if confirmed, until the end of the four-year period from the term's beginning, and then there is a vacancy. It is manifest from the face of the act, which states that "within thirty days after the passage of the act, the Governor shall appoint," that it was the plain, legislative intention that the beginning of the term was not to be postponed until the next regular session of the General Assembly.

## Quo Warranto.

WRIT OF OUSTER DENIED AND PROCEEDING DISMISSED.

*Jamison & Thomas* for informant.

(1) The Senate of the Forty-fourth General Assembly, in extra session, was empowered to advise and consent to the appointment of relator. 1. Action at an extra session may be taken upon matters presented by the Governor in special message. Const., 1875, art. 4, secs. 9, 55; St. Louis v. Withaus, 16 Mo. App. 247. 2. The confirmation of official appointment by the Senate is not a legislative act and may be done at special session, although not mentioned in proclamation or message. 23 Am. and Eng. Ency. Law (2 Ed.), 346-7; 19 Cong. Rec. 53; People v. Blanding, 63 Cal. 333. (2) Relator took the prescribed oath and qualified. Const. 1875, art. 14, sec. 6; R. S. 1899, sec. 8844; Hill v. Boyland, 40 Miss. 618. (3) Relator's term continues until his successor is appointed and

qualified. Factory Inspection Statute, Laws 1901, p. 197; Const. 1875, art. 14, sec. 5; R. S. 1899, sec. 8847; State ex rel. v. Thompson, 38 Mo. 192; State ex rel. v. Perkins, 139 Mo. 114; State ex inf. v. Lund, 167 Mo. 228; Throop on Public Officers, sec. 323; 23 Am. and Eng. Ency. Law (2 Ed.), 313-14, 415; Badger v. United States, 93 U. S. 599; Meyer v. Culver, 35 Pac. 984; Haley v. Petty, 42 Ark. 392; People v. Edwards, 93 Cal. 153; Shaefer v. Bernero, 11 Mo. App. 562; Knight v. Mersman, 66 Mo. App. 219; State v. Kurtzeborn, 78 Mo. 98; State v. Spitz, 127 Mo. 248. (4) "Appointed" here means selected and designated according to the terms of the statute creating the office, in the case at bar,—the appointment must be with the advice and consent of the Senate. 23 Am. and Eng. Ency. Law (2 Ed.), 346, 415; State v. Harrison, 113 Ind. 434; Kimberlin v. State, 130 Ind. 130; People v. Knight, 116 Cal. 108; Throop on Pub. Officers, sec. 328; People v. Cazenau, 20 Cal. 504; State v. Bryson, 44 Ohio St. 457; Mechem on Pub. Officers, secs. 113, 114; State v. Barbour, 53 Conn. 76; Marbury v. Wilson, 1 Cranch 137; People v. Fitzsimmons, 68 N. Y. 514; Watkins v. Watkins, 2 Md. 355; People v. Bissell, 49 Cal. 408; People v. Molyneaux, 4 N. Y. 113; Taylor v. Hebden, 24 Md. 203. (5) Respondent, therefore, not having been appointed "with the advice and consent of the Senate," cannot claim the office by virtue of the statute creating it. (6) The Governor has power to appoint to fill a vacancy only where an actual vacancy exists. Const. 1875, art. 5, sec. 11. (7) The expiration on May 13, 1909, of the definite term for which Hiller and relator were appointed, did not create a "vacancy," since relator was then lawfully holding and performing the duties of the office of Factory Inspector. State ex rel. v. Smith, 152 Mo. 512; State ex rel. v. Dabbs, 182 Mo. 359; State ex rel. v. Blakemore, 104 Mo. 340; State ex inf. v. Burkhead, 187 Mo. 14; Tredway v. Lusk, 18 Mo. 33; Mechem on Pub. Off.,

secs. 128, 129, 130, 134 and 397; Throop on Pub. Off., secs. 312, 330, 331, 431, 437, 307 and 308; People v. Crissey, 91 N. Y. 616; People v. McIver, 68 N. C. 467; Brannon v. Long, 78 Va. 352; State ex rel. v. Harrison, 113 Ind. 434; State v. Howe,. 25 Ohio St. 588; State ex rel. v. Rareshide, 32 La. Ann. 934; People ex rel. v. Lord, 9 Mich. 227.

*Blevins & Jamison* for respondent; *Charles Mayer* of counsel.

The date of the appointment, first made by the Governor for the office in question, initiated the official term of the appointee and all subsequent appointments necessarily had reference to such initial period. State ex rel. v. Stonestreet, 99 Mo. 373; Attorney-General ex rel. v. Love, 39 N. J. L. 476. (a) When no time is mentioned in the law from which a term shall commence, it must run from the date of election. State ex rel. v. Constable, 7 Ohio 7; Marshall v. Harwood, 5 Md. 423; Hughes v. Buckingham, 5 S. & M. 632; People ex rel. v. McClare, 99 N. Y. 83; Parcel v. State ex rel. Lowery, 110 Ind. 122; State ex rel. v. Spitz, 127 Mo. 252; State ex inf. v. Herring, 208 Mo. 730. (b) Under the authorities last cited, the official term of C. J. Nordmeyer, who was the first appointee as Factory Inspector for the term of four years, expired on May 18, 1905, and not on May 13, 1905. J. C. A. Hiller was then appointed and commissioned by Governor Folk for a term of four years, beginning May 13, 1905, and ending May 13, 1909, but under the authorities supra, his term expired on May 18, 1909. Mr. Hiller resigned the office on May 11, 1907, and the vacancy in the unexpired term of Hiller ended May 18, 1909, and not on May 13, 1909. The pretended appointment of relator by Governor Folk to fill out the unexpired term of Mr. Hiller was void and of no effect. Biddle v. Williard, 10 Ind. 63.

FOX, J.—This is a contest between Jesse W. Sikes and W. W. Williams as to who is entitled to the office of factory inspector of the State of Missouri.

It is not essential to reproduce the petition filed by the Attorney-General, nor the return as made to the preliminary writ issued upon such petition. However, to fully appreciate the vital questions confronting us, it is essential that a brief statement of the facts be made.

The office of factory inspector was created by an act of the General Assembly approved April 17, 1901. [Laws 1901, p. 197.] There was an emergency clause to this act. Section 1 of this act, in so far as is material to this controversy, reads: "That within thirty days after the passage of this act . . . the Governor of the State, with the advice and consent of the Senate, shall appoint a competent person to serve as factory inspector who shall hold office for four years from the date of his appointment or until his successor is appointed and qualified."

On May 18, 1901, C. J. Nordmeyer was appointed to the office by the then Governor for a term ending May 13, 1905. Nordmeyer held the office until May 19, 1905. Normeyer's appointment was not confirmed by the Senate until the session in 1903. On May 19th, J. C. A. Hiller was appointed for a term ending May 13, 1909, which being after the adjournment of the General Assembly he could not have been confirmed until after January 2, 1907, at which term of the General Assembly his appointment was confirmed. After the adjournment of the General Assembly for 1907, on May 11, 1907, Hiller resigned, which resignation was accepted by the Governor. March 20th, 1907, the Governor issued a call for a special session of the 44th General Assembly of Missouri, to meet on April 9, 1907. Among the purposes assigned in the call was the following:

"Seventh: To consider any other subject that may be submitted by special message, during such session."

On May 6, 1907, the Governor sent to the Senate the following communication:

"OFFICE OF THE GOVERNOR.
"*State of Missouri, City of Jefferson.*
                                    May 6th, 1907.
"To the Senate:

"I have the honor to advise that I have this day, by and with the advice and consent of the Senate, appointed Jesse W. Sikes, of the city of St. Louis, to the office of Factory Inspector, vice J. C. A. Hiller, resigned, for a term ending May 13, 1909.

                "Respectfully,
                    "JOS. W. FOLK,
                            "Governor."

This appointment was confirmed by the Senate at such extra session. The commission was of date May 11, 1907, and Sikes qualified May 17, 1907. On November 16, 1907, the Governor sent the following:

"OFFICE OF THE GOVERNOR.
"*State of Missouri, City of Jefferson.*
                                    Nov. 16th, 1907.
"To the Secretary of State,

"Sir: I have the honor to advise that, by virtue of authority in me vested by section 1 of an act of the Forty-fourth General Assembly of the State of Missouri, approved May 9, 1907, I have this day, with the advice and consent of the Senate, appointed Jesse W. Sikes of the city of St. Louis to the office of Factory Inspector, to hold for a term of four years from August 11, 1907. Issue accordingly.

                "Respectfully,
                    "JOS. W. FOLK,
                            "Governor."

On November 18th, a commission was issued to cover this appointment, which commission authorized Mr. Sikes to hold the office for four years from August 11, 1907. Under this commission, Sikes again qualified. On January 6, 1909, this last appointment was sent to the Senate for confirmation and no action was taken thereon. On May 22, 1909, Governor Hadley, as the successor of Governor Folk, commissioned the respondent as factory inspector of the State of Missouri for a "term of four years from May 13th, 1909, effective June 1st, 1909, vice J. W. Sikes," under which commission respondent in due time qualified, and is now claiming to be the duly appointed and qualified factory inspector of this State, and in pursuance of such claim is undertaking to discharge the duties of such office.

This sufficiently indicates the facts concerning the controversy between these two claimants to the office of factory inspector to enable us to present our views upon the legal propositions involved.

## OPINION.

### I

At the very threshold of the consideration of the legal propositions confronting us it is obvious that the relator, Mr. Sikes, does not base his claim to the office of factory inspector under and by virtue of the last commission issued to him for that office. While the Act of 1907 amended in some minor particulars the Act of 1901, it will not be seriously insisted that it so amended the original act as to create a new office and thus necessitate a new appointment. But even if this contention is made by the relator, the new appointment was never confirmed by the Senate; hence in this controversy manifestly the relator is compelled to rely upon and does rely upon the first appointment as a

justification for his claim to the office. But aside from this, one of the contentions of learned counsel for relator is that by reason of the language employed in the Act of 1901, and he receiving his appointment and commission under that act, there was no vacancy to be filled at the time the respondent, Mr. Williams, received his commission. This obviously is a practical concession on the part of relator that he had no rights under and by virtue of the second appointment; hence it follows that whatever rights, if any, to which relator is entitled, must be sought under the first appointment. With this view we shall not undertake in the presentation of our views upon the legal propositions confronting us, to discuss the question of the second appointment and commission for the term of four years.

It is insisted by respondent that the first appointment of the relator, Mr. Sikes, was not confirmed by the Senate. This insistence is doubtless predicated upon the theory that the Senate had no authority to confirm at a special session. We are unwilling to give our assent to this insistence. The confirmation by the Senate of appointments made by the Governor are not legislative acts, and in our opinion can be made as well at a special session as a regular session. Such acts by the Governor concerning appointments are merely administrative and can be confirmed by the Senate whenever that body is in session, and it is immaterial for what purpose the legislative body may have been called in session. In other words, whenever the body is lawfully convened for legislative purposes it has the right to act for administrative purposes, even without mention of such purpose in the call for a special session. We deem it unnecessary to further discuss this contention, for in our opinion the call by the Governor of the special session was broad enough to cover all emergencies, and fully authorized

the Senate to confirm the merely administrative acts by the Governor.

## II.

This brings us to the consideration of the real question, that is, what was the status of relator respecting the office of factory inspector under and by virtue of his first appointment to and commission by the Governor for that office? In other words, what was the force and effect of the appointment and commission?

By the commission the term of relator expired May 13, 1909, or as soon thereafter as his successor was appointed and qualified. This leads us to the inquiry of what is meant by the terms "appointment" and "qualified." The contentions of relator and respondent upon this proposition may thus be briefly stated: Relator insists that without the confirmation and acquiescence of the Senate there can be no legal appointment made by the Governor to the office of factory inspector. On the other hand the respondent contends that when the term of factory inspector is at an end there was a vacancy, and the Governor had the right to fill it by appointment until such time as the Senate saw fit to confirm or reject the appointment. In other words, to emphasize the insistence of the relator, his contention is that it takes the joint act of the Governor and the Senate to make the appointment, and without such there is no legal right in any person who has been appointed to the office of factory inspector, after the expiration of a term, to hold the office. This is the overshadowing proposition confronting us, the correct solution of which must be sought by a fair, reasonable and impartial application of the law to the subject.

It will be observed that the act creating the office of factory inspector designates the length of the term, but does not undertake to fix the date of the beginning

or ending thereof. It is important in the treatment of this question that we do not overlook that this is an appointive office and not an elective one.

This leads us to the inquiry as to when did the term of office of factory inspector begin and when did it end. This question was directly in judgment before this court in State ex rel. v. Stonestreet, 99 Mo. 361. We there had under consideration a law which fixed the duration of the term, but did not designate the beginning of such term nor the expiration thereof, that is to say, no exact date was fixed for the beginning or ending of the term. It necessarily follows that the power which could fix the beginning of the term must of necessity have the power to designate the end of such term. In other words, if the law-making power designates the length of the term but leaves it to another power to fix the beginning of such term, it necessarily gives the same power which designated the beginning the right to fix the end of such term. Where the law creates an office and prescribes the length of the term, with no date fixed for the beginning or ending of such term, and designates the power which is vested to fill such office by appointment, it necessarily follows that the appointive power has the right to fix not only the commencement of the term, but as well the end thereof. The power to fix one means a power to fix the other, and it is immaterial at which end of the term this power operates. It can say in the first instance that this term shall begin on a certain date and run so long, or it can say this appointment is made under the law with the understanding that it shall end upon a certain date. In either case the power recognized as having the right to designate the beginning and ending of the term has acted.

In the case now in hand there seems to be some controversy between counsel as to the beginning or ending of the term of office now in dispute, one insisting that May 13th was the date fixed, the other May

the 18th.    Obviously this dispute is immaterial, and for the purposes of this case we shall treat May 13th as the date fixed for the beginning and ending of the term of this office.

When the General Assembly created the office of factory inspector, prescribing the length of the term, but failing to designate the commencement or ending of such term, and investing the Governor with the power of appointment to fill such office, that the Governor had the right to fix the commencement and ending of such term there certainly can be no dispute.

In State ex rel. v. Stonestreet, 99 Mo. 361, heretofore referred to, this proposition is fully discussed and the authorities exhaustively reviewed. It so fully presents the question, and being in harmony with the conclusions we have reached upon this proposition, we trust the length of the quotation will be pardoned. Judge SHERWOOD, in that case, treating of this proposition, thus announced the rules of law applicable to it:

"Going to the standards of our language we find that *a term* means 'the time for which anything lasts; any limited time; the term of life.' [Webster's Dict.] And turning to the authorities, they announce that 'the expression, term of office, uniformly designates a fixed and definite period of time.' [Anderson's Law Dict. 1023; People v. Brundage, 78 N. Y. 403, 407; Baker, Governor, v. Kirk, 33 Ind. 517.] So that whether we take the phrase, 'term of office,' in its ordinary or popular sense, or in its technical import, it means one and the same thing: 'A fixed and definite period of time.'

"Of course, every such period of time, in order to be 'fixed and definite,' must have a point of beginning and a point of termination equally fixed and definite. Now, if it can be ascertained when the 'term of office' of the first appointee of the Governor under the revision of 1879 began, it would seem not difficult to reach a correct conclusion as to when the terms of

office of the successive and subsequent appointees of the Executive began and ended.

"The statute is silent on the point as to the beginning of the first appointee's term, and the reason for this is most obvious, since, the power of appointment being lodged in the Executive, it belonged to him in fact, if not in law, to determine the time of the inception of the actual official term of such appointee; the duration of that term was already fixed by law. But if the Legislature, being possessed of the power, had fixed the date of the commencement of the first appointee's official term, it would not be questioned that such initial point, being once made sure and steadfast, would recur at every corresponding period of two years. This must be true, or else the premises from which this conclusion is drawn, sustained as it is by authority, that a 'term of office uniformly designates a fixed and definite period of time,' must be false. As the Legislature did not fix the date when the official term of the first appointee under the new law was to begin, this date was necessarily left to be fixed by the appointing power; but, when fixed, the determination thus reached must have been as effectual in all its incidents and consequences as if previously made by the Legislature. This also must be true, or else it must be true that the Executive was incapable of fixing such initial point, and that, therefore, *it never was fixed,* which is an impossible as well as an absurd, supposition.

"This reasoning leads to this result: That the *date* of the appointment, first made by the Governor for the office in question, initiated the official term of the first appointee, and that all subsequent appointments necessarily had reference to such initial period, and, so far as lawful, conformed thereto. Attorney-General ex rel. v. Love, 39 N. J. L. 476, is decisive of this point. And the general rule is elsewhere recognized that when no time is mentioned in the law, from

which the term shall commence, it must begin to run from the date of the election. [State ex rel. v. Constable, 7 Ohio 7; Marshall v. Harwood, 5 Md. 423; Hughes v. Buckingham, 5 S. & M. 632.]

"These last, though *election* cases, furnish a strong analogous support to the view already expressed, showing, as they do, the urgent necessity felt of having some determinate period at which and from which official terms shall begin. The law favors uniformity, but uniformity cannot be obtained except by the establishment of an inflexible rule. And the course in the office of the Executive in regard to appointment of the first appointee, the language of his commission, and the language of all subsequent commissions, except that of the relator, fixing the beginning of such official term at June 18th, biennially, as the period from which to reckon the duration of such term, affords a contemporaneous as well as a continuous, exposition of the meaning of the law and of the intention of its makers, that is not without value in the present investigation. Such contemporaneous and continuous construction, in the absence of anything of a countervailing character, should be sufficient *per se* to settle the controversy on the point in hand adversely to relator.

"Under statutory provisions substantially identical with these under discussion, it has been held that the true rule was to construe the word 'term' as designating consecutive periods of six years, following each other in regular order, the one commencing where the other ends, and treating the incumbent appointed in any such period as the incumbent in the particular term or period to which his appointment relates, his office expiring with the expiration of his term. [People ex rel. v. McClare, 99 N. Y. 83, 93.] The statute there was like section 5838, providing that the appointee should hold for a certain number of years and until his successor should be appointed and

qualified, and also like section 5832, providing that in case of vacancy an appointment should occur for the residue of the term.

"The ruling just mentioned is in entire conformity to the authorities and views heretofore cited and expressed as to the date of the commencement and the uniform duration of the successive terms of office of the different and successive appointees under the law now being discussed. And, upon the very face of section 5838 aforesaid, there appears a legislative command that the term of office of each appointee is to last two years 'from the date of his appointment;' but the Legislature was cognizant that appointments might fail to be made at the proper time; that deaths, resignations, failure to accept, qualify, etc., might occur, and so made provision in section 5838 that an appointee should hold office, not only for his official term of two years, but until his successor should be duly appointed and qualified. And section 5852 exhibits the same marks of legislative solicitude that uniformity should prevail as to the duration of the official term of the inspector; for that section makes special provision, in case of vacancy, that the Governor, upon being informed thereof, 'shall appoint and commission his successor *for the remainder of the term of office as therein provided.' What term of office?* Evidently the term of two years mentioned in section 5838, beginning at the date of the original appointee's appointment."

Obviously there is little to be added to the discussion of the proposition involved in that case, which is equally applicable to the case at bar. Whatever other courts may say upon this proposition, the statute involved in the case last cited and quoted from, which in some of its features is similar to the statute now before us, has been interpreted by this court, and we see no valid, legal reason for departing from such interpretation.

In the case at bar the Act of 1901, as has been repeatedly stated, did not designate the date of the beginning or ending of the term, but the Governor, who was fully vested with appointing power to fill such office, did fix the date of the ending of the term of the relator. By the designation as made by the Governor of the ending of the term, it follows that relator's term expired on May 13, 1909, unless there are provisions in the statute which would longer continue such term.

### III.

This brings us to the consideration of the statute which would authorize the relator to hold and enjoy the office of factory inspector beyond the end of his term, May 13, 1909. The only provision of law authorizing the relator to hold beyond the designated end of his term, May 13, 1909, are the terms employed in the statute providing that he shall hold "until his successor is appointed and qualified." While this language recognizes the fact that there might be some delay in the appointment and qualification of a successor, it equally and fully recognizes the right of the Governor to appoint at any time after the term. Upon this proposition it must not be overlooked that the cases treating of this subject recognize a distinction between appointive and elective officers, and when the cases are fully considered and analyzed it will be found that learned counsel for relator are in error when they say that our later cases are in conflict with State ex rel. v. Stonestreet, supra, and State ex rel. v. Thomas, 102 Mo. 85.

For the purposes of appointment there was a vacancy in this office May 13, 1909. The law does not contemplate that there is a new beginning and ending of the term by each appointment, but the term becomes fixed by the first appointment under the act.

## IV.

It is next earnestly insisted by relator that the respondent has never been legally qualified, for the reason that the Senate has not ratified his appointment. This insistence is predicated upon the provision of the statute which reads: ''The Governor of the State, with the advice and consent of the Senate, shall appoint,'' etc.

It is fundamental that in the construction of statutes the courts should so interpret them as to conform with the intent of the law-making power that enacted them. Applying this fundamental rule of construction to the contention of the relator upon this proposition, in our opinion, his insistence is not a fair construction of this law, and is directly in conflict with the manifest intention of the law-making power.

The General Assembly provided for the first appointment to be made at a time when the Senate would not be in session. It must have known that the Senate would not be continuously in session, and would not likely be in session at the time when further appointments were made. The law contemplates that such appointments shall be made at the proper time, and that the Senate will act upon the appointment at the next session thereafter. The law does not contemplate that there can be no occupant of the office until both the Governor and Senate have acted. Were that true, in case of the death of an occupant at a time when the Senate was not in session, the business of the office would have to cease until the Senate met. Such was never in the minds of the members of the General Assembly. The very fact that the law itself provided for the first appointment to be made at a time when it was not contemplated that the General Assembly would be in session, is strongly indicative of the legislative intent. We are unwilling to give the statute now under consideration an interpretation

which would manifestly conflict with the clear intention of the law-making power and absolutely deprive the Governor of the power to discharge the administrative duties incumbent upon him by reason of such enactment. Laws must be given a reasonable construction, keeping in view the purposes of as well as the circumstances surrounding their enactment. Giving to this law·such a construction, it must be held that the legislative intent was to authorize the Governor to make appointments to this office at such times as vacancies occurred therein, and that the consent of the Senate would be given or refused at the next succeeding meeting of that body. In the meantime, such appointee, after having otherwise qualified under the act, is entitled to the office until such time as the Senate may pass adversely upon his appointment. Should the Senate refuse to confirm, the Governor would then have to appoint another. This at least has been the uniform course pursued by all prior administrations dealing with legislative enactments of this character.

The exact question here involved came before the Supreme Court of Florida, in the case of State ex rel. v. Murphy, 32 Fla. 138. The constitutional provisions there were much as they are here. After an exhaustive review of all the authorities, RANEY, C. J., reached the same conclusion as herein indicated.

In discussing the time for holding over by the old officer, the Texas Supreme Court, in State v. Cocke, 54 Tex. l. c. 485, aptly says: "The primary object of this provision, that the incumbent is entitled to hold the office until his ·successor is elected or qualified, is simply to prevent, on grounds of public necessity, a vacancy in fact in office until the newly elected or appointed officer can have a reasonable time within which to qualify. The right of the officer who thus holds over is by sufferance, rather. than from many intrinsic title to the office."

To the same effect is the case of Johnson v. Mann, 77 Va. l. c. 271, where it was said: "The provision of the Constitution mainly, if not solely, relied on by counsel for petitioner, is the twenty-fifth section of the sixth article. It simply provides for the holding over by the incumbent after the expiration of his term, until his successor shall qualify. The plain, unequivocal import of this section of the Constitution is, that when the regular term expires, the office becomes, in the eye of the Constitution, vacant, but with authority to the incumbent, already qualified, to continue by virtue of such previous qualification, made effective for the purpose by the Constitution, to discharge the functions of the office until he is succeeded in the way preferred by the people, as pointed out in the Constitution made by them, and in the laws made in pursuance of that instrument." See also Prowell v. State (Ala.), 39 So. 164; Kline v. McKelvey (W. Va.), 49 S. E. 896; Fritts v. Kuhl, 51 N. J. L. 191.

We have given expression to our views upon the legal propositions involved in this proceeding, which results in the conclusion that the respondent, W. W. Williams, is the legally qualified factory inspector of this State, and that the writ of ouster sought by this proceeding should be and is hereby denied and the proceeding dismissed.

All concur, except *Valliant, C. J.,* who is absent.