| 63 333 |
| d130 89 |

[In Bank.—April 21, 1883.]

## THE PEOPLE, ETC., EX REL. WILLIAM H. KNIGHT *v.* WILLIAM BLANDING, RESPONDENT.

CONSTITUTIONAL LAW—EXTRA SESSION—CONFIRMATIONS BY SENATE.—The constitutional limitation on the power of the legislature when convened in extra session applies only to acts of *legislation*—the joint action of the Senate and Assembly. Whenever the legislature is lawfully convened, the Senate may confirm appointments made by the governor.

ID.—EXPIRATION OF TERM OF OFFICE—APPOINTMENT OF SUCCESSOR.—The respondent, Blanding, was a harbor commissioner under a commission dated March 8, 1878, for a full term of four years. Anticipating the expiration of the term, the governor nominated the relator, Knight, his successor, on the 12th day of April, 1881. The appointment was confirmed by the Senate at the extra session of 1881, and on the 8th day of March, 1882, a commission issued. *Held,* that the appointment was not invalid because the commission issued on the day on which respondent's term expired.

ID. — CONSTRUCTION OF WORD "AT." — The word "at" as used in section 2520 of the
Political Code, to wit: "The governor shall, in like manner, at the expiration
of their respective terms, appoint and commission their successors," is indefinite
in its meaning, and may mean the *exact moment* of time, or *near* it.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco.

The respondent Blanding was on the 4th day of March, 1878,
by the governor nominated as a member of the State board of
harbor commissioners, on the 6th day of March was confirmed
by the Senate, and on the 8th day of March was commissioned
to hold for the term of four years. A special session of the leg-
islature, commencing April 4th, was held in the year 1881, pur-
suant to a proclamation of the governor. In the proclamation,
among the purposes specified for convening the legislature, was
the following: "To send appointments to the Senate for their
confirmation."

On the 12th day of April, 1881, the governor nominated the
relator as State harbor commissioner *vice* the respondent, term
expiring March 8, 1882; on the 13th of April, 1881, the Senate
confirmed the appointment, and on the 8th of March, 1882,
the governor issued his commission, and the relator qualified,
duly presented his commission to the board, and demanded of
respondent the surrender of the office. Upon a refusal, this
action to try the right to the office was brought by the attorney-
general in the name of the people. On behalf of the respondent
it was contended that the appointment of the relator was invalid
because: first, the consent of the Senate to his appointment was
given during the extra session of the legislature of 1881; and
second, because the appointment was made by the governor on
the day on which the term of the respondent expired.

*Thomas J. Clunie, W. H. L. Barnes,* and *George A. Knight,*
for Appellant.

The prohibition contained in the Constitution is that the legis-
lature, when so convened, has no power to *legislate* on any subjects
other than those specified in the proclamation. We do not pretend
that consenting to an appointment is a legislative act, and if it is
not it does not come within the prohibition. The matter of

appointments was mentioned in the proclamation, and was *incidental* to the extra session of the legislature, and was expressly provided for in the foregoing section of the Constitution; but if it were not, as we have shown by the briefs on file, the Senate, when lawfully convened in extra session, may do anything that it could do at a regular session, unless there be a clause in the Constitution that prohibits them.

The legislature when lawfully convened, whether in virtue of the provisions of the Constitution or the governor's proclamation, can, when not restricted by constitutional provision, do anything at an extra session that it might at a regular session. (*Morford* v. *Unger*, 8 Iowa, 82; *McAffee* v. *Russell*, 29 Miss. 84.)

In this case, there is no such clause anywhere in the Constitution. The claim of counsel, that "articles of impeachment could not be preferred at an extra session," and therefore consent of the Senate to appointments could not be given at that time, is equally fallacious. The Constitution, article iv., § 17, adds: "The Assembly shall have the sole power of impeachment, and all impeachments shall be tried by the Senate," etc. Why, then, cannot articles of impeachment be preferred by the Assembly at an extra session? Is there any constitutional objection to it?

The maxim, *expressio unius est exclusio alterius,* has no application to a State Constitution. The rule of construction invoked by the respondent does not apply to State Constitutions; in fact, it is right the reverse. The legislature can do all acts not prohibited by the Constitution, the State Constitution and the Federal Constitution being entirely different in this respect.

The appointment was not premature. (See *Brady ex rel.* ——, v. *Howe,* 50 Miss. 607; *State ex rel. Geo. B. Whitney* v. *Hiram Van Buskirk,* 40 N. J. 463; *Marshall* v. *Harwood,* 5 Md. 423; *People* v. *Reid,* 6 Cal. 289; *People* v. *Mizner,* 7 Cal. 519; *People* v. *Tilton,* 37 Cal. 614; *People* v. *Howe,* 25 Ohio St. 588; 18 Am. Rep. 324.)

Knight was not appointed harbor commissioner until the issuance of his commission. (See *People* v. *Taylor,* 7 Pac. C. L. J. 480; Pol. Code, § 996, subd. 9; *Marbury* v. *Madison,* 1 Cranch, 137; *U. S.* v. *Le Baron,* 19 How. 74; *People* v. *Whitman,* 10 Cal. 38; *State* v. *Allen,* 21 Ind. 516, 521; Opinions of

Atty.-Gen., vol. 4, p. 217; Story on Constitution, p. 398; 2d Story on Constitution, § 1546; *People* v. *Murray,* 70 N. Y. 526.)

*Wallace, Greathouse & Blanding,* for Respondent.

The governor had no power to convene the legislature in extra session, as upon an extraordinary occasion, for the purpose of enabling it to receive or consent to appointments; nor did the Senate have any power in extra session to consent to such appointments. (Constitution of 1879, art. v., § 9; see *Jones* v. *Theall,* 3 Nev. 233; also *Morford* v. *Unger,* 8 Iowa, 86, 87.)

The Constitution of 1879 is mandatory and prohibitory, not directory. (Art. i., § 22.)

No other State Constitution contains this provision.

The governor must state the purposes for which he has convened the legislature, and each purpose must be capable of being qualified by the term "extraordinary occasion."

Each purpose must be distinct, must be an "extraordinary occasion," and must stand by itself. It cannot derive support from any other purpose stated in the proclamation. It would not be permissible to insert one good subject, and thus bolster up and fortify other and invalid subjects.

The legislature may legislate on the subjects specified in the proclamation, but on *none other.*

The two expressed exceptions exclude all not expressed. With scrupulous care, the Constitution has specified the *two sole* permissible exceptions, to wit: that the legislature may in extra session provide for the expenses of the session, and that it may provide, also, for all other matters that are incidental to the session.

"Extraordinary occasion" must qualify everything upon which the legislature can act in extra session; but "extraordinary occasion" can never qualify the action of anything less than the *whole legislature.* It cannot qualify or be an attribute of the action of the Senate as such, nor of the House as such. It cannot qualify or be an attribute of the action of the Senate alone in consenting to appointments, and hence that consent can never be given in *extra session.*

The power is to convene the legislature as a whole and for subjects upon which it can act as a whole; and, when so convened, the legislature can only act as a whole. There is no power given to convene either the Senate or House alone, as in the Constitution of the United States.

There is no reason *in fact* why an "extraordinary occasion" could ever arise as to appointments to office. The whole machinery of appointments is completely provided for and regulated by law. If there is an incumbent, he holds, and *must* hold, "although his term has expired, until his succesor has qualified." (Section 879, Pol. Code; *People* v. *Whitman,* 10 Cal. 38; *People* v. *Bissell,* 49 Cal. 407; *People* v. *Tilton,* 37 Cal. 619.)

Relator's appointment was and is void in that it was premature.

The appointment by the governor, on April 12, 1881, the consent of the Senate in extra session, on the following day, and the commission issued on March 8, 1882, were all *ultra vires,* in that they were made before the power to make them did or could exist. The mode and time of appointment to office are purely statutory, and to the statute we must look. The relator could not be appointed or commissioned *prior* to the expiration of the term of the defendant. (Pol. Code, § 2520.)

This section provides, as to harbor commissioners, that "the governor shall, in like manner [i. e., by and with the consent of the Senate], *at the expiration of their respective terms,* appoint and commission their successors." Defendant's term of office included all of the 8th day of March, 1882. He held office for four years from the date of his commission, and his commission was dated March 8, 1878.

When a public officer holds *from* a certain day, the first day is always excluded and the last included. (*Best* v. *Polk,* 18 Wall. 112, 119; Pol. Code, § 12; *Watson* v. *Pears,* 2 Camp. 294; *Bank of Oswego* v. *Ives,* 2 Hill, 355; *Portland Bank* v. *Maine Bank,* 11 Mass. 204; Smith's Commentaries, §§ 616, 617, 618.)

There are many cases which hold that prospective appointment is bad even where there are no statutory words limiting the time when it should be made. To this effect are *Ivy* v. *Lusk,* 11 La. An. 486, 488; *Commonwealth* v. *Fowler,* 10 Mass. 300,

301; *Noe* v. *Bradley*, 3 Blackf. 158–161; *Biddle* v. *Willard*, 10 Ind. 62.

THORNTON, J.— It is urged that the appointment of the relator Knight is invalid, for the reason that the consent of the Senate to his appointment was given during the extra session of the legislature of 1881, when it was convened by proclamation of the governor, for the purpose of legislating upon certain subjects specified in the proclamation.

We concur in the view in regard to this point taken in the former opinion of the court, filed November 28, 1882, and adopt its language, which is as follows: —

"In our view of the matter, it is not necessary to consider whether the governor could constitutionally convene the legislature in extra session for the sole purpose of having the Senate consent to his appointments. Nor is it necessary to inquire whether that was one of the subjects specified in the proclamation by which he convened the legislature at that time. The fact that the legislature was lawfully convened on that occasion, and that while so convened the Senate consented to the appointment of the relator, is not disputed. The legislature had no power to act on that subject whether it was specified in the proclamation or not, and the constitutional prohibition is limited to subjects upon which the legislature would have power to legislate in the absence of any prescribed limitation. The prohibition applies only to acts of legislation, and it was wholly unnecessary to prohibit legislation by the Senate, because the Senate alone could not legislate. It might pass any number of bills, but until concurred in by the other House, and approved by the governor, they would have no validity. Therefore, the constitutional limitation on the power of the· legislature to legislate, when convened in extra session, does not apply to this case, and the Senate had the same power to consent to the appointment of the relator that it would have had if the Constitution had authorized the governor to call an extra session of the legislature whenever he should deem it advisable to do so, without imposing any other limitations upon its power to legislate when so convened than are imposed on its power to legislate when convened in regular session."

It is further argued that the appointment is invalid because it was made by the governor on the day on which the term of the respondent expired, and that the governor was not authorized to make such appointment until the respondent's term had expired. To sustain this argument we are referred to section 2520 of the Political Code, which, so far as bears on this question, is in these words:—

"As soon as may be after the passage of this act, the governor, by and with the consent of the Senate, shall appoint three harbor commissioners, who shall hold office, one for two years, one for three years, and one for four years, from the date of their respective commissions. The governor shall, in like manner, at the expiration of their respective terms, appoint and commission their successors for a full term of four years."

Let it be conceded that respondent's term included the whole of the 8th of March, 1882, and that relator was appointed on the same day. We do not think with this concession that the argument is sound. The preposition "at" is indefinite in its meaning; such is the view of it taken by Dr. Webster. (See the word in Webster's Dictionary.) He says: "It is less definite than '*in*' or '*on*'; 'at the house' may be *in* or *near* the house." With reference to time, it may mean *the exact moment* or *near* it. In common speech the word is so used. When the legislature used the words in the section above quoted "*at the expiration of*," it would be a very strained construction to hold that it was intended to designate the exact moment rather than a few moments before. It seems by the argument to be admitted that it may designate any time *after* the expiration, even a few moments *after*. If a few moments after, why not a few moments before? We see no reason why one construction is not as correct as the other.

It is consistent with the finding that the appointment was made on the last moment of the 8th of March. To hold under such circumstances that the governor could not lawfully exercise the power of appointment, would be adhering to the exact letter of the statute with a strictness not at all commendable. To lay down such a ruling as law, would seem to men of good common sense and fair judgment, as savoring of the absurd. To hold to the letter of the act as contended for by respondent, would tend

strongly to establish the position that the power of appointment must be exercised at the very *punctum temporis* when respondent's term ended, or it would not be lawfully exercised. The interpretation urged by counsel for respondent may be an ingenious refinement, but it would not be a tenable construction of the section referred to.

The judgment is reversed and cause remanded, with directions to enter judgment for the plaintiff in accordance with the prayer of the complaint.

MYRICK, J., SHARPSTEIN, J., and MCKEE, J., concurred.

ROSS, J., and MCKINSTRY, J., dissented.