(125 So. 567)

No. 30074.

STATE ex rel. SAINT, Atty. Gen., et al. v. IRION, Conservation Com'r.

Nov. 4, 1929. Rehearing Denied Dec. 2, 1929.

Earl K. Long, Sp. Asst. Atty. Gen., and L. H. Perez and Robert C. Davey, Sp. Counsel, both of New Orleans, for appellants.

Edward Rightor, Rene A. Viosca, and Val Irion, all of New Orleans, for appellee.

ROGERS, J. This is a suit instituted under the provisions of Act No. 102 of 1928 for the possession and emoluments of the office of commissioner of conservation. The plaintiff is the state of Louisiana, on the relation of its Attorney General, suing at the suggestion and request of the Governor, and of Robert S. Maestri, who was appointed and qualified as commissioner of conservation in the early part of February, 1929. Respondent filed exceptions of insufficiency and no cause or right of action, which were overruled. Respondent then filed his answer, denying the claims asserted in plaintiff's petitions on behalf of the relator Robert S. Maestri, and setting up title in himself to the office in dispute. He alleged that he was commissioned commissioner of conservation on August 13, 1925 and took his oath and filed his bond as such on August 15, 1925. He further alleged that his appointment was approved by the state Senate on May 19, 1926.

At the inception of the trial on the merits, respondent filed a second exception of no right of action, setting forth that, since the alleged appointment of the relator Maestri, the state Legislature had met twice in special session, and that, since at neither of these sessions had the relator's appointment been submitted for confirmation, he stood rejected. Respondent also renewed, by way of objection to evidence, his exceptions of insufficiency and no cause or right of action to the demand made on behalf of Maestri for the emoluments of the office. The objection was sustained, and evidence as to that portion of relators' demand was excluded. After hearing the case on the merits, the court below rendered a judgment in favor of the respondent, rejecting the relators' demands. From this judgment relators have appealed.

It is not disputed that on February 1, 1929, the Governor appointed the relator Robert S.

Maestri commissioner of conservation; that on February 6, 1929, relator took his oath of office, which was filed with the secretary of state on February 7, 1929. But the respondent contends that he cannot be ousted in behalf of Maestri from the office of commissioner of conservation which he now holds for the following reasons, viz.:

(1) That the office of commissioner of conservation was made a constitutional office under the Constitution of 1921, and therefore respondent's term, running concurrently with other state officers, expired in May, 1928, during the session of the Senate. That the Governor, having failed to make an appointment while the Senate was in session, is precluded from subsequently making a recess appointment.

(2) That, in the alternative, if respondent's term did not expire in May, 1928, since the first term began on the day the Constitution took effect, July 1, 1921, it did not expire until July 1, 1929; hence the appointment of relator Maestri was premature.

(3) That, subsequent to the appointment of relator Maestri, the Legislature met twice in special session, but the Senate failed to confirm the appointment, which was not submitted to that body; hence the appointee has no standing in law to contest defendant's title to the office in dispute.

(4) That, in any event, the appointment of relator Maestri is incomplete and ineffective, because it was made by the Governor only, without the concurrence of the Senate.

The first and second grounds of defense to the relators' demand may properly be considered and disposed of together, since they involve the question of the termination of respondent's term of office. In order to reach a conclusion in that respect, we must necessarily examine the constitutional and statutory provisions pertinent thereto. We shall proceed to do so.

Under Act No. 127 of 1912, a conservation commission was created as a department of the state government. The statute provided that the commission should be composed of three commissioners, and defined their duties and powers. The term of each of the commissioners was fixed at four years. By Act No. 66 of 1916, section 1 of Act No. 127 of 1912 was amended and re-enacted so as to reduce the number of commissioners from three to one. This act created a "department of conservation" under the direction and control of an officer to be known as "commissioner of conservation." It was provided in the statute that the commissioner should be appointed by the Governor by and with the advice and consent of the Senate for a term of four years. It was further provided in the statute that the commissioner should have and exercise all the authority, power, duties, and privileges of the conservation commission established by Act No. 127 of 1912. By the Constitution of 1921, the status of the commissioner of conservation was changed from that of a statutory officer to that of a constitutional officer. Const. 1921, art. 5, §§ 1, 18, and 20; article 6, §§ 1, and 2. Under article 5, § 18, the power was lodged in the Governor by and with the advice and consent of the Senate to appoint a commissioner of conservation for a term of four years.

The record shows that the first commissioner of conservation under Act No. 66 of 1916 was M. L. Alexander, who was commissioned August 3, 1916, qualified August 9, 1916, and confirmed by the Senate on July 24, 1917. Alexander was recommissioned, vice himself, term expired, December 12, 1921. He qualified under the appointment December 20, 1921, and was confirmed by the Senate on July 3, 1922. Alexander died, and Dudley Berwick was appointed to succeed him. This was a temporary appointment. Berwick

qualified July 2, 1923, but his name was withdrawn from the Senate, and W. J. Everett was commissioned on August 27, 1924, to fill the vacancy caused by the death of Alexander. Everett, however, failed to qualify within the time required by law, and was reappointed to succeed himself on September 26, 1924. He qualified under his second appointment on October 25, 1924. Everett resigned in August, 1925, and the respondent, Valentine K. Irion, was, on August 13, 1925, appointed to fill the vacancy caused by the resignation. Irion qualified under his appointment on August 15, 1925, and was confirmed by the Senate on May 19, 1926. On January 31, 1927, Frank T. Payne was appointed to the office on the claim that the term of Irion had expired. Payne qualified immediately, and shortly thereafter engaged in a litigation with Irion, who disputed the legality of his appointment. The litigation ceased when the then Governor issued to Payne a commission as chairman of the highway commission. See State ex rel. Payne v. Irion, 163 La. 1019, 113 So. 360. Since that time Irion has been in possession and control of the office.

The relators' position is: That the term of M. L. Alexander, the first commissioner of conservation appointed under the provisions of Act No. 66 of 1916, began to run for four years from August 9, 1916, the date of his qualification, and expired on August 9, 1920. That therefore the expiration of each succeeding term must be governed necessarily by that date. That, as a result of this construction of the law, the term of W. J. Everett, the predecessor in office of the respondent, Irion, began to run on August 9, 1924, and expired on August 9, 1928. That, as a consequence of this legal situation, the appointment of Irion on August 13, 1925, was for the term of the office expiring on August 9, 1928.

The respondent's position is: That the provisions of the Constitution of 1921 supersede the provisions of the statute of 1916, and that, under the provisions of the organic law, the term of the commissioner of conservation runs concurrently with the terms of the Governor, Lieutenant Governor, auditor, secretary of state, register of the land office, and commissioner of agriculture and immigration. That, inasmuch as the terms of the executive officers we have enumerated began to run under the Constitution on the first Monday in May, 1924, following the legislative announcement of their election, the term of the commissioner of conservation, who is also an executive officer, commenced on the same day. That accordingly the term of that office expired in May, 1928, while the Senate was in session, and, the Governor having failed to fill the vacancy occurring at that time, cannot do so subsequently during the recess of the Senate.

Respondent's alternative position is that, under the Constitution, the first term of the commissioner of conservation began on July 1, 1921, the day on which the organic law became effective, and ended on July 1, 1925. That the succeeding term began on July 1, 1925, and ended on July 1, 1929, so that no vacancy existed in the office at the time the relator Maestri was commissioned and on the day this suit was filed.

Our examination of the positions assumed by the respondent has led us to the conclusion that they are not sound. Undoubtedly all statutory provisions are superseded by the provisions of the Constitution with which they are necessarily and obviously in conflict. But we do not find that to be the case here. The only effect of transforming the statutory office of commissioner of conservation into the constitutional office of commissioner of conservation was to increase

the salary of the commissioner and to prevent, when confirmed by the Senate, his removal by the Governor. No attempt was made by the framers of the Constitution to define his powers nor to prescribe his duties. They delegated these matters, together with the obligation of providing for the expenses of the office, to the Legislature itself. The term of the commissioner was fixed by the statute at four years, and it was also fixed by the Constitution at four years. No date, however, was fixed by the Constitution for the beginning of the term. There was no necessity, and perhaps no authority, on the part of the framers of the instrument, for fixing the commencement of the official term, because they were merely reaffirming in constitutional form that which was already existing and functioning in statutory form, and moreover were expressly inhibited by the legislative call for the constitutional convention (Act No. 180 of 1920) and the schedule of the instrument itself (article 22, § 1) from reducing or shortening the term of any presently existing state, district, parochial, or municipal office. The schedule of the Constitution further provided for the continuance in effect of all laws in force at the time of its adoption, except laws inconsistent with its provisions. There is nothing in the legislative act with respect of the establishment of the department of conservation, the office of commissioner of conservation, the term of the office, and the Governor's power of appointment with the concurrence of the Senate that is inconsistent with the organic law. On the contrary, the utmost harmony is maintained between the statutory provisions and the constitutional provisions.

We are not prepared to accept as correct relators' contention that the term of respondent in the line of succession to M. L. Alexander, the first incumbent, expired on August 9, 1928. We might be prepared to do so if the question were res nova in our jurisprudence, but it is not. In the early case of Bry v. Woodrooff, reported in 13 La. 556, involving an appointive office, this court held that, where the statute creating the office was silent as to the beginning of the term, its duration was to be reckoned from the date of the statute, and a new appointment should be made accordingly. The question was again before the court in State v. Parker, 30 La. Ann. 1182, where the rule was laid down that, when there is nothing in an act, effective from its passage, creating an office and its term directing otherwise, the term of the office commences to run from the passage of the act. Both these decisions were referred to with approval but differentiated from the case under consideration in State v. Young, 137 La. 102, 68 So. 241.

But for the purposes of this controversy it is immaterial whether the appointment of M. L. Alexander as commissioner of conservation took effect from August 9, 1916, the date of his qualification, or from the passage of Act No. 66 of 1916, June 30, 1916, or from the time of its promulgation. It is certain, in any event, that the official term expired on or before August 9, 1920, and that each succeeding term expired on the corresponding day in cycles of four years. This interpretation of the constitutional provisions is in accord with the contemporary construction thereof by the governmental agencies charged with their enforcement. Thus we find that the appointment of M. L. Alexander, the original commissioner of conservation, expired in July or August, 1920, and that, at the time of the adoption of the Constitution of 1921, he was by sufferance merely filling a constructive vacancy in the office caused by the expiration of his term. The second appointment of Alexander was made after the adoption of the

Constitution. The commission was issued to him by the Governor vice himself, term expired, on December 12, 1921, and his appointment was confirmed by the Senate on July 3, 1922. Therefore, notwithstanding that the appointment of Alexander was made and confirmed after the adoption of the Constitution, it was not for a new office and term created by the Constitution itself, but for an existent office and term continued in force and effect by that instrument and recognized as such by the Governor and the members of the Senate. Hence it is perfectly plain that the unexpired term for which the respondent, Irion, was appointed on August 13, 1925, terminated on or before August 9, 1928.

■ The third ground of respondent's defense is likewise untenable. The question raised therein is no longer open to controversy in the courts. It was propounded and answered in the case of State v. Dowling, 167 La. 907, 120 So. 593. There we held, in refusing the respondent's application for a rehearing, that it is the discretionary and not the mandatory duty of the Governor to have his recess appointments confirmed at a special session of the Legislature; hence his failure to send the name of a recess appointee to the Senate for confirmation at a special session did not operate as a rejection of the appointment. The pertinent constitutional provisions have been construed by this court, and we see no legal or valid reason for departing from that construction.

■ Respondent's fourth ground of defense must also fail. The theory underlying this particular point' of defense is that a different method is provided by the Constitution for the appointment of the commissioner of conservation than for other officers whom the Governor is authorized to commission during the recess of the Senate, subject to confirmation by that body at the following regular legislative session.

Section 12 of article 5 of the Constitution reads, in part, as follows, viz.:

"The Governor shall have the power to fill vacancies that may occur during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session," etc.

Section 18 of article 5 of the Constitution reads, in part, as follows, viz.:

" * * * And the Governor shall, by and with the advice and consent of the Senate, appoint for the term of four years a Commissioner of Conservation, and in case of vacancy for any cause, he shall, by and with the advice and consent of the Senate fill the office by appointment for the unexpired term," etc.

The argument advanced in behalf of the respondent is that, in the case at hand, the provision in section 12 of article 5 of the Constitution, authorizing the Governor to fill vacancies occurring during the recess of the Senate, has no application, because such authority, under the terms of the constitutional article itself, cannot be exercised in cases otherwise provided for, and that the provision in section 18 of article 5 of the Constitution specifically provides that a vacancy in the office of the commissioner of conservation can be filled by the Governor only by and with the advice and consent of the Senate.

■ For our own part, we are unable to perceive any inconsistency or conflict between the constitutional provisions. Obviously the purpose of section 12 of article 5 of the Constitution in providing for ad interim appointments is to avoid inconvenience or delay in the public business until the office can be filled in the ordinary way. The law abhors a vacancy as vigorously as nature abhors a vacuum, and its policy is always to have some one in place to discharge the duties of a public office. So true is this that, even in a doubtful case, a statute providing for the filling of a vacancy

must be construed so as to avoid it. See Throop, Pub. Off. § 308, p. 312. The language of section 18 of article 5 of the Constitution, declaring that a vacancy in the office of commissioner of conservation shall be filled by the Governor with the advice and consent of the Senate, means nothing more than that the full unexpired term of the office shall be filled by an appointment made in the prescribed way. It has no reference whatever to the filling temporarily of a vacancy pending the assembling of the Senate at the next regular session of the Legislature. As a matter of fact, there is no provision made in the Constitution for the convening of the Senate in extraordinary session by the Governor for the purpose of passing upon his nomination to fill a vacancy occurring during a legislative recess. On the contrary, the only authority conferred upon the Governor by that instrument to convene the Senate in special or extraordinary session is as a branch of the Legislature, when he, at the same time, convenes the House of Representatives as the other branch of the Legislature. Const. art. 5 § 14.

A question similar in principle to the one presented here was before this court in the case of State v. Young, referred to supra, involving the office of the examiner of state banks, a constitutional officer under article 194 of the Constitution of 1898, and whose appointment it was provided should be made by the Governor by and with the advice and consent of the Senate. Mr. Justice O'Niell, now Chief Justice, as the organ of the court, answering a series of questions which he propounded relative to the occurrence of a vacancy at the expiration of the term of the office held by the respondent and the right of the respondent to continue as a hold-over in the face of the Governor's appointment of his successor, said: . . . . . . . . . . . . . . . .

"In this form the question is to be answered by determining whether an appointee whom the Governor had authority to appoint by and with the advice and consent of the Senate may qualify and demand possession of the office before his recess appointment is confirmed by the Senate.

"Until now it has never been doubted—perhaps because no one has thought of denying —that, when the term of an appointive office expires during a recess of the Senate, the person appointed to succeed to the office may immediately qualify and enter upon his official duties, without waiting for his appointment to be confirmed by the Senate." See page 113 of the opinion in 137 La., 68 So. 245.

And the conclusion reached by the court, as announced by the author of the opinion, is couched in the following words, viz.:

"We conclude that the expiration of the defendant's term of office on the 28th of December, 1914, created a vacancy which the Governor had authority to fill by the appointment made during the recess of the Senate, and that the plaintiff Sims is entitled to the possession of the office." See page 119 of the opinion in 137 La., 68 So. 247.

And it is pertinent to observe that under article 71 of the Constitution of 1898, under the provisions of which the Young Case was litigated, the authority is given the Governor to appoint numerous constitutional officers, but only after he has obtained the advice and consent of the Senate in such appointments, and that article 72 of the same Constitution, relative to the power of the Governor to fill recess vacancies, is couched in the identical language used in section 12, art. 5, of the Constitution of 1921.

. The vacancies otherwise provided for in the Constitution, and which the Governor under the restriction contained in section 12 of article 5 of the Constitution is not authorized to

fill, are such vacancies only as the Constitution provides shall be filled instantly and permanently. For example, in the case of a vacancy in the office of Governor, the vacancy is filled in the order of succession by the lieutenant governor, president pro tem. of the Senate, etc. (Const. art. 5, § 6); in the case of a vacancy in the office of lieutenant governor, the vacancy is filled by the president pro tem. of the Senate (Const. art. 5, § 9); in the case of a vacancy in the office of a justice of the Supreme Court, the vacancy is filled by selection by the court of a judge of one of the Courts of Appeal from a Supreme Court district other than that in which the vacancy occurs, unless the vacancy is for two years or more, when it must be filled by election; and, in the case of a vacancy in the office of the Chief Justice, the vacancy is filled by the justice oldest in point of service (Const. art. 7, § 7); in the case of the Attorney General, the vacancy is filled until the election of his successor by the First Assistant Attorney General (Const. art. 7, § 56); in the case of a vacancy in the office of any parish coroner, the vacancy for the unexpired term may be immediately filled by appointment by the Governor (Const. art. 7, § 72); in the case of vacancies occurring in any of a number of offices in the parish of Orleans, the vacancies are to be filled immediately as set forth in the organic law (Const. art. 7, § 93).

Moreover, we find on a further examination of the Constitution that it provides, in case of a vacancy for any cause in the office of any of the judges of the Courts of Appeal, such vacancy shall be filled by appointment by the Governor by and with the advice and consent of the Senate until the next congressional election, at which time the vacancy is to be filled by election for the remainder of the term. Const. art. 7, § 21. And that in the case of a vacancy in any of the numerous offices of the various judicial districts throughout the state, where the unexpired term of the office is less than a year, the vacancy shall be filled by appointment by the Governor by and with the advice and consent of the Senate. If the theory advanced by the respondent be correct, it would necessarily mean that, in every case of a vacancy in any of the numerous offices referred to, the Governor being inhibited from making an ad interim appointment and being also without authority to convene the Senate in extraordinary session to confer with him in regard to making the appointment for the full unexpired term, the public business would be delayed and inconvenienced for the entire period elapsing from the date of the vacancy to the ensuing legislative session. We do not think that the framers of the Constitution intended that so harmful a result should follow from the practical application of the Constitution; and, for our own part, we cannot sanction such a strained construction of its provisions.

Relators earnestly urge that the court below erred in sustaining respondent's exceptions and objection of insufficiency of the demand made on behalf of relator Maestri for the emoluments of the disputed office. Under the statute, Act No. 102 of 1928, such emoluments are not recoverable unless the bad faith of the respondent is shown. Neither of relators' petitions, original or supplemental, contain allegations of fact constituting bad faith; the allegations in that respect being merely conclusions of law. In these circumstances we do not find any error in the ruling of the court sustaining respondent's exceptions to the petitions, and his objection to evidence.

Our conclusion is that the relator Robert S. Maestri is entitled to the possession and control of the office of the commissioner of conservation which the respondent Valentine K.

Irion is now holding merely by sufferance and without an intrinsic right thereto.

For the reasons assigned, the judgment herein appealed from is annulled, and it is now ordered that there be judgment against the respondent, Valentine K. Irion, and in favor of the state of Louisiana and of the relators, decreeing that the relator Robert S. Maestri is commissioner of conservation and that respondent Valentine K. Irion is an intruder into and unlawfully holding and exercising the functions thereof; decreeing further that the respondent, Valentine K. Irion, shall recognize the title of the relator Robert S. Maestri to the office of commissioner of conservation and shall forthwith deliver to said Maestri the possession and physical properties of said office. All costs of this suit to be paid by the respondent, Valentine K. Irion.

THOMPSON, J., concurs in opinion holding defendant to have been in good faith, but otherwise dissents.

O'NIELL, C. J., dissents on the ground, first, that section 18 of article 5 of the Constitution, in plain language, forbids the filling of a vacancy in the office of commissioner of conservation without the advice and consent of the Senate; and, second, that, if the Governor were not forbidden to fill the vacancy without the advice and consent of the Senate, the commission which he issued would have expired, and did expire, at the end of the next session of the Senate, according to the plain language of section 12 of article 5 of the Constitution, because of the Governor's failure to have the appointment confirmed by the Senate. The decision in State v. Young, 137 La. 102, 68 So. 241, cited in the prevailing opinion in this case, is not at all appropriate, because in that case, where the office of bank examiner was in contest, the Constitution and the statute on the subject authorized

the Governor to fill a vacancy during a recess of the Senate, by issuing a commission which would expire at the end of the next session of the Senate.

O'NIELL, C. J. (dissenting). It is not important now whether the defendant's term of office expired in May, 1928, or in July, 1929, or in August, 1928. He is the incumbent in office, and, as such, is required by section 6 of article 19 of the Constitution to continue to discharge the duties of the office until one who is rightfully his successor is inducted into office. According to the Act No. 102 of 1928, p. 125, under which this suit is brought, the Attorney General has no right to bring the suit except in "the name of the person rightfully entitled to the office." For that reason, this court dismissed the relator's appeal in the case of State ex rel. Payne v. Irion, 163 La. 1019, 113 So. 360, on the ground that Payne, after being appointed commissioner of conservation, and while his appeal in the suit for possession of the office was pending, accepted an appointment as chairman of the highway commission, and thereby forfeited his eligibility for the office of commissioner of conservation.

The two important facts in this case are, first, that the Governor is forbidden, by section 18 of article 5 of the Constitution, to fill a vacancy in the office of commissioner of conservation without the advice and consent of the Senate; and, second, that, in the cases where the Governor has "the power to fill vacancies that may occur during the recess of the Senate," according to section 12 of the same article of the Constitution, the commissions which he may issue "expire at the end of the next session." There were two sessions of the Legislature held and adjourned after the Governor issued his commission to Robert S. Maestri, as commissioner of conservation;

and in neither session of the Senate did the Governor send in the name of Maestri for confirmation. Section 12 of article 5 of the Constitution declares emphatically that "the failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection," and that the person so rejected shall not be appointed to the same office during a recess of the Senate.

It is conceded, in the prevailing opinion rendered in this case, that the only authority which the Governor has for filling vacancies that occur during a recess of the Senate is in section 12 of article 5 of the Constitution; and that section declares that the authority is given only "in cases not otherwise provided for in this Constitution." Section 18 of the same article declares that a vacancy in the office of commissioner of conservation cannot be filled by appointment by the Governor except "by and with the advice and consent of the Senate." I quote now that part of section 18 which refers only to this particular office, viz.:

"* * * And the Governor shall, by and with the advice and consent of the Senate, appoint for the term of four years a Commissioner of Conservation, and in case of vacancy for any cause, he shall, *by and with the advice and consent of the Senate* fill the office by appointment for the unexpired term." (The italics are mine.)

A vacancy in the office of commissioner of conservation is therefore one of the cases excepted from the general provisions of section 12 of the same article of the Constitution, under the proviso, "in cases not otherwise provided for in this Constitution."

It is said in the prevailing opinion rendered in this case: "The language of section 18 of article 5 of the Constitution, declaring that a vacancy in the office of commissioner of con-

servation shall be filled by the Governor by and with the advice and consent of the Senate, means nothing more than that the full unexpired term of the office shall be filled by an appointment made in the prescribed way." I respectfully submit that, if that is the meaning of the language, it is a mere waste of words, because section 12 of the same article provides for the filling of vacancies, by appointments made in the prescribed way, *"in cases not otherwise provided for in this Constitution."*

It is said also in the prevailing opinion in this case that "a question similar in principal to the one presented here was before this court in the case of State v. Young [137 La. 102, 68 So. 241]"; and attention is directed to the fact that I wrote the opinion in that case I cannot understand why the four members of the court who are deciding this case do not see the difference between the Young Case and this case. The difference is that, in the Young Case, there was no special provision in the Constitution or in the statute on the subject of the office in contest, as there is in this case, for the filling of a vacancy. Therefore the authority for filling the vacancy in the Young Case, by appointment during a recess of the Senate, was contained in article 72 of the Constitution of 1898, which is section 12 of article 5, of the Constitution of 1921, which provides generally for the filling of all vacancies occurring during a recess of the Senate, "in cases not otherwise provided for in this Constitution." In the opinion which I wrote in the Young Case, 137 La. 105, 68 So. 241, I quoted the article of the Constitution (article 194 of Const. of 1898) and the statute (Act No. 198 of 1898) creating the office of state bank examiner; and I again direct the attention of the four members of this court, who have rendered the prevailing opinion in the present case, to the fact that there was no

requirement either in the article of the Constitution or in the statute on the subject of the state bank examiner—as there is in section 18 of article 5 of the Constitution of 1921 providing for the office of commissioner of conservation—that a vacancy in the office shall be filled "by and with the advice and consent of the Senate." Any one who will read the opinion rendered in the Young Case will see that there were only two questions presented, viz.: First, whether the defendant Young's term of office had expired when the relator, R. N. Sims, was appointed, during a recess of the Senate; and, second, whether the temporary appointee, Sims, had the right to enter upon and discharge the duties of the office before the Senate had held a session and had had an opportunity to confirm or reject the recess appointment. We decided, first, that Young's term of office had expired when Sims was appointed, during the recess of the Senate; and, second, that Sims had the right to discharge the duties of the office, by virtue of his temporary appointment, which would expire at the end of the next session of the Senate. But in that case there had been no session of the Senate subsequent to the appointment of Sims; and it was not contended or pretended that there was any special provision in the Constitution, such as there is in this case, requiring the appointment to fill a vacancy to be made only "by and with the advice and consent of the Senate."

It is conceded, in the prevailing opinion rendered in this case, that the Governor has no authority to fill a vacancy, under section 12 of article 5 of the Constitution 1921, by making an ad interim appointment without the advice or consent of the Senate, except "in cases not otherwise provided for in this Constitution." It is also conceded in the prevailing opinion in this case that there are cases otherwise provided for in this Constitution.

But it is argued, in the prevailing opinion in this case, that the cases "otherwise provided for in this Constitution" are such as, for example, if the Governor dies or resigns, or is removed from office, the lieutenant governor immediately succeeds to the office; or, if the lieutenant governor dies, or resigns, or is removed from office, the president pro tempore of the Senate shall discharge the duties and receive the emoluments of the office; or, if the Attorney General dies, or resigns, or is removed from office, the First Assistant Attorney General shall perform the duties of the office until his successor shall have been duly elected and qualified; or, if the Chief Justice of the Supreme Court dies, or resigns, or retires, or is removed from office, the justice oldest in point of service thereby becomes Chief Justice. In those cases, of course, there is no interregnum, or vacancy in the office; and it is certain that the *exception*, in section 12 of article 5 of the Constitution, of cases otherwise provided for in the Constitution, does not refer to those cases where there is no vacancy to be filled by appointment or otherwise.

Conceding, however, for the sake of argument, that we may ignore the provision in section 18 of article 5, that the Governor has no authority to fill a vacancy in the office of commissioner of conservation except "by and with the advice and consent of the Senate," and that he had authority to appoint Mr. Maestri under the general provisions of section 12 of article 5, by granting a commission which would expire at the end of the next session of the Senate, it is certain that the commission which was granted to Mr. Maestri did expire at the end of the next session of the Legislature held after the commission was granted. There were two sessions of the Legislature held after the Governor issued a commission to Mr. Maestri; and the Governor did not see fit to have the appointment confirmed. It is

true that both of those sessions of the Legislature were special sessions, as distinguished from a regular or biennial session; but the Constitution makes no distinction or exception in that respect. Section 12 of article 5 declares that a commission issued to fill a vacancy occurring during a recess of the Senate "shall expire at the end of the next session"; that a "failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection"; and that the appointee so rejected shall not be appointed to the same office during a recess of the Senate. For convenience, I quote section 12 of article 5 again, viz.:

"The Governor shall have the power to fill vacancies that may occur during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session; but no person who has been nominated for office and rejected shall be appointed to the same office during the recess of the Senate. The failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection."

The four justices who rendered the decision in this case refused, literally, to consider the defense that Mr. Maestri's commission had expired; and the only reason which they gave for their refusal to consider the question was that it is was "no longer open to controversy in the courts," since it was decided in the refusal to grant a rehearing in the case of State ex rel. Saint, Attorney General, v. Dowling, 167 La. 907, 120 So. 593. All that is said on the subject, in the prevailing opinion in the present case, is in the following paragraph, viz.:

"The third ground of respondent's defense is likewise untenable. The question raised therein is no longer open to controversy in the courts. It was propounded and answered in the case of State v. Dowling, 167 La. 907, 120 So. 593. There we held, in refusing the respondent's application for a rehearing, that it is the discretionary and not the mandatory duty of the Governor to have his recess appointments confirmed at a special session of the Legislature; hence his failure to send the name of a recess appointee to the Senate for confirmation at a special session did not operate as a rejection of the appointment. The pertinent constitutional provisions have been construed by this court, and we see no legal or valid reason for departing from that construction."

To say that this constitutional question is not open to controversy in the courts because it was decided by the refusal to grant a rehearing in the Dowling Case is very near, if not quite, a denial of due process of law; for it is a denial of the guaranty, imbedded in our Bill of Rights, that all courts shall be open to hear any complaint of an infringement of any one's rights, and to give an "adequate remedy by due process of law and justice."

In Dowling's Case, the special session of the Legislature adjourned after the suit was decided by this court, and while the defendant's application for a rehearing was pending. If the so-called rehearing had been granted because of the contention that the relator's commission had expired after the decision was rendered, it would not have afforded a rehearing or reconsideration of that question at all, but would have afforded an opportunity for an original hearing and consideration of the question as far as that case was concerned. In the present instance, the two sessions of the Legislature were held and adjourned before the case was heard in the civil district court; and the defense that the relator's commission had expired was urged by way of

an exception to his right of action. What was said in the Dowling Case, in the reasons given for refusing to grant a so-called "rehearing," is hardly pertinent to the present case; much less an absolute bar to a consideration of the question as being "open to controversy in the courts." The question was not even argued orally in the Dowling Case, because the rules of court do not allow oral argument in support of an application for a "rehearing," and, as I have said, the application was not really for a "rehearing," but for an original hearing, of the question whether the relator's commission had expired.

As a matter of fact, the four justices who have rendered a decision in the present case show, in one part of this decision, that they do not regard the per curiam, in which they gave their reasons for refusing a so-called rehearing in the Dowling Case, as being decisive of cases arising subsequently and presenting the same questions of law. In the present case it is decided that the relator Maestri is not entitled to the emoluments of the office from the date of his demand for possession of the office, because it was not shown that the defendant, Dr. Irion, was in bad faith in contending that the relator's commission was invalid or had expired. On that subject it is said in the prevailing opinion in this case: "Under the statute, Act No. 102 of 1928, such emoluments are not recoverable unless the bad faith of the respondent is shown." That is correct, because Act No. 102 of 1928, which is an amendment and re-enactment of section 2597 of the Revised Statutes, has changed the law in that respect. Before the section of the Revised Statutes was amended by the Act of 1928, the relator in a case like this was entitled to the emoluments of the office merely "on proof that the defendant * * * has received fees or emoluments belonging to said office." In my dissenting opinion in the Dowling Case (on pages 949 and 950 of 167 La., 120 So. 607), dissenting from the refusal to grant a rehearing, I called attention to the error which we had made in depriving the defendant of the emoluments of the office when there was no showing or pretense of his being in bad faith. But the four justices who alone subscribed to the per curiam in the Dowling Case—and who are now giving such decisive effect to what was otherwise said in that per curiam—answered my dissenting opinion on that subject in one paragraph, thus:

"It is clear, therefore, that if relator was not rejected by the failure of the Governor to have the recess appointment confirmed at the special session of the Senate, held December 10–16, 1928, his commission is still in full force and effect, *and, as the rightful claimant to the office, relator is entitled to all of the emoluments from the date of his qualification under his commission until the office is surrendered to him by respondent. Act 102 of 1928, § 3.*" (The italics are mine.)

That part of the decision which was rendered in the refusal to grant a so-called "rehearing" in the Dowling Case is now overruled by the four justices who subscribed to it, and in fact is overruled by the court unanimously; and therefore I respectfully submit that the other question of law on which the four justices expressed an ill-advised opinion in refusing to grant a so-called "rehearing" in the Dowling Case should not be characterized now as being "no longer open to controversy in the courts."

I say that the declaration made in the refusal to grant a so-called rehearing in the Dowling Case, that a commission issued to fill a vacancy occurring during a recess of the Senate did not expire at the end of the next session if the next session happened to be a special session, was ill-advised, because it was based upon a citation of two decisions

which did not support it, namely, State ex inf. Major, Attorney General, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S.W. 64, 17 Ann. Cas. 1006, 22 R. C. L. 432, and People ex rel. Knight v. Blanding, 63 Cal. 333. And I say respectfully that the declaration made in the refusal to grant a so-called rehearing in the Dowling Case was ill-advised for the further reason that it was contrary to the opinions rendered in every jurisdiction in which the question had been decided, and was contrary to four previous decisions of this court, namely, State ex rel. Morgan v. Kennard, 25 La. Ann. 238, State ex rel. Meyer v. Van Tromp, 27 La. Ann. 569, State v. Powell, 40 La. Ann. 241, 4 So. 46, 8 Am. St. Rep. 522, and State ex rel. Duffy v. Goff, 135 La. 340, 65 So. 483, the rulings in which cases were approved by the Constitutional Conventions of 1879, 1898, 1913, and 1921.

In the Dowling Case it was said, with the concurrence of only the four justices who have decided the present case:

"Therefore, our conclusion is that, under section 12 of article 5 of the present Constitution, the Governor is compelled to have recess appointees confirmed by the Senate only at regular or biennial sessions of the Legislature, although, in his discretion, he may have such appointees confirmed at a special session. State ex inf. Major, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006; People ex rel. Knight v. Blanding, 63 Cal. 333; 22 Ruling Case Law, p. 432."

The case of State ex inf. Major, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006, is not authority for the statement that the Governor may, in his discretion, either send in his recess appointments for confirmation at the next session of the Senate, if it happens to be a special session, or withhold them until the next regular session. On the contrary, the ruling was that

the words "next session" meant *next session,* whether special or regular session. The pertinent part of the decision is expressed in two paragraphs of the syllabus, thus:

"The confirmation by the senate of an appointment of a public officer made by the governor is not a legislative act, but can be performed as well at a special session as at a regular session. Nor is it material, in this regard, for what purpose the legislative body may have been called in session. Whenever the senate is lawfully convened for legislative purposes it has the right to act for administrative purposes, even without mention of such purpose in the call for a special session.

"A statute authorizing the governor to appoint a specified public officer with the advice and consent of the senate cannot reasonably be construed as contemplating that there can be no occupant of the office until both the governor and the senate have acted. On the contrary, it contemplates that the appointment shall be made at the proper time, and that the senate shall act thereupon at its *next session.* In the meantime, the appointee, after having otherwise qualified under the act, is entitled to the office *until such time as the senate may pass adversely upon his appointment,* in which event it would become incumbent upon the governor to appoint another person." (The italics are mine.)

It is true that the Senate did not pass adversely upon the appointment of Mr. Maestri, at the *next session* held after his appointment; but the Constitution, in section 12 of article 5, declares that the failure of the Governor to send in the name of his appointee at the *next session* is equivalent to a rejection.

In the other case cited in the Dowling Case, People ex rel. Knight v. Blanding, 63 Cal. 333, the only point that was decided, that is at all

pertinent to the present case, was that the words "next session" meant *next session*, whether special or regular session. The court said:

"The constitutional limitation on the power of the Legislature when convened in extra session applies only to acts of *legislation*—the joint action of the Senate and Assembly. Whenever the Legislature is lawfully convened, the Senate may confirm appointments made by the governor."

I shall now review the four decisions which this court has rendered on the subject, and which will be virtually overruled if we maintain now that what was said to the contrary in refusing a so-called rehearing in the Dowling Case "is no longer open to controversy in the courts."

In the case of State ex rel. Morgan v. Kennard, 25 La. Ann. 238, the facts were as follows: Governor Warmoth appointed John H. Kennard as justice of the Supreme Court, during a recess of the Senate, to succeed W. W. Howe, resigned. Warmoth was impeached by the House of Representatives, and pending his impeachment was suspended. P. B. S. Pinchback, being lieutenant governor and acting governor, appointed Philip H. Morgan to the judgeship, and the latter appointment was confirmed at the next session of the Senate, which was a special session. Meantime, Kennard had taken the oath and was discharging the duties of the office, under his recess appointment by Governor Warmoth. Justice Kennard therefore refused to surrender the office, contending that his commission would not expire until the end of the next *regular* session of the Senate, and that therefore there was no vacancy for acting Governor Pinchback to fill by appointment and confirmation at the extra session. The case was governed by article 61 of the Constitution of 1868, which declared: "The gov-

ernor shall have power to fill vacancies that may happen during the recess of the Senate, by granting commissions, which shall expire at the end of the next session thereof, unless otherwise provided for in this Constitution." The question before the court therefore was whether Governor Warmoth's appointment of Justice Kennard expired at the end of the next session of the Senate, which happened to be a special session, or continued until the end of the next regular session; for there was no vacancy for acting Governor Pinchback to fill, by the appointment of Morgan, if Kennard's appointment, by Governor Warmoth, should endure until the end of the next regular session of the Legislature. The court decided that Kennard's commission had expired at the end of the next session of the Senate, even though it was a special session of the Legislature. The court said:

"The language of the constitution seems too clear to admit of but one construction— 'until the end of the next session of the Senate.' It is not denied that there was an extra session of the General Assembly convened on the ninth day of December, 1872; but it is contended that the constitution in article sixty-one refers to ordinary or regular sessions. The constitution authorizes the governor to convene the Legislature on extraordinary occasions. There is no reason therefore to say that article 61 refers only to the regular or annual sessions of the General Assembly—and we can not construe article 61 in the manner contended for by the defendant, without interpolating the words regular or ordinary in the article—which, of course, we can not do. It is manifest from article 75 of the constitution that it was the intention of the framers of the constitution that the judges of the Supreme Court should be appointed by the governor, 'with the advice and consent of the Senate,' and article 61 provides for a con-

tingency which might arise, *but it limits the duration of the commission of the officer, appointed when the advice of the Senate could not be had, to the end of the 'next session of the Senate,'* during which session the governor can, if he wishes, have the advice of the Senate. *This limitation was a restriction upon the power conferred upon the governor ex necessitate rei.*" (The italics are mine.)

The next case on the subject was State ex rel. Meyer v. Van Tromp, 27 La. Ann. 569, in which it so happened that Justice Morgan was the organ of the court. The facts and the issue and conclusion are stated tersely in the opinion thus:

"When the Senate was in recess, a vacancy occurred in the office of recorder of the parish of West Feliciana. Van Tromp was appointed to fill it. The governor afterwards convened the Legislature in extra session.

"At this session he nominated J. C. Meyer for the office. The nomination was confirmed, and a commission was issued to him.

"Van Tromp claims that the appointment of Meyer was illegal, and refuses to give him up the office.

"The vacancy having occurred when the Senate was not in session, the nomination to fill the same was properly made at the called session, which was the 'next session' after the vacancy occurred. To fill this vacancy the governor had the power to nominate whom he pleased, and this without regard to any appointment he might have made during the recess."

Strange to say, the justice who wrote the reasons for refusing a so-called *rehearing* of this question in the Dowling Case quoted the last paragraph of the opinion which I have just quoted, and he contended that that language distinguished that case and the case of State ex rel. Morgan v. Kennard from the Dowling Case; but he ignored the fact that, if the words "next session" meant "next regular session," and did not include also an extra session, the governor would have had no power whatever "to nominate whom he pleased" at the special or extra session, because the term of office of the person who was appointed during the recess of the Senate would not have expired until the end of the next regular session. When the governor has made an appointment to fill a vacancy in a constitutional office, during a recess of the Senate, by issuing a commission "which shall expire at the end of the next session," he has no authority to remove the appointee, without cause, or to appoint some one else to the same office, until the next session of the Senate. Therefore, if the words "next session," as used in section 12 of article 5 of the Constitution, mean next regular session, a person who is appointed during a recess of the Senate has the right to hold the office until the next regular session, and the governor has no right to nominate any one for appointment to the same office at the next session of the Senate if that session happens to be an extra session. All of which demonstrates that the rulings made in State ex rel. Morgan v. Kennard and in State ex rel. Meyer v. Van Tromp are directly in point, and shows the palpable error of saying that it is optional with the governor to say whether a commission issued by him to fill a vacancy occurring during a recess of the Senate shall expire at the end of the next session, if it happens to be a special session, or only at the end of the next regular session.

The next case in which the court decided this question was State v. Powell, 40 La. Ann. 241, 4 So. 447, in which Chief Justice Fenner was the organ of the court. The case was governed by article 69 of the Constitution of

1879, which was exactly the same as section 12 of article 5 of the Constitution of 1921. The court said:

"Under article 69 of the constitution, the term of an officer appointed by the governor during the recess of the senate cannot extend beyond the end of the next ensuing session of the legislature; and where the same name is subsequently sent to the senate and confirmed, and a new commission is issued, the latter is a distinct appointment, and requires a new bond."

The justice who wrote the reasons for refusing a so-called rehearing of this question in the Dowling Case said (page 933 of 167 La., 120 So. 593, 602) that, in the case of State v. Powell, the limitation, that the commission should expire at the end of the next session of the Senate, was written in the commission itself, and that therefore the decision was not pertinent to the Dowling Case; but he was mistaken in that statement. He quoted only partially from the opinion in State v. Powell, thus: "The commission under which the bond was furnished, * * * was limited to the end of the ensuing session of the Legislature, to wit, December 24, 1881." What the court had said in the Powell Case was: "The question is whether defendants are liable except for moneys collected during the term of the commission under which the bond was furnished, which was limited to the end of the ensuing session of the Legislature, to-wit, December 24, 1881." The court did not say that the commission was limited to the end of the ensuing session, but that the term was limited, by article 69 of the Constitution of 1879. I have examined the original record of that case, in the archives of this court, and I find that there was no limitation written in the commission itself. The only contention made in the defendant's brief, in that case, was that the commission had expired by vir-

tue of the limitation contained in article 69 of the Constitution of 1879, viz.: "When these defendants went on Powell's bond in the first instance, they did it knowing that his commission, that is, his authority to act as Sheriff, would expire at the end of the next session of the Legislature, because that was the law, and that law entered into their contract of surety." And, again, they argued: "* * * The first commission having expired, as provided by the Constitution, Art. 69."

There is nothing in the opinion which was rendered in the Powell Case to warrant the statement made in refusing to grant a so-called rehearing in the Dowling Case, viz.: "Because of the limitation in the commission itself in the Powell Case, the court was compelled to hold that the commission expired at the end of the special session, without the necessity of interpreting article 61 of the Constitution of 1868 [meaning article 69 of the Constitution of 1879]."

The next case in which the court decided this point was State ex rel. Duffy v. Goff, 135 La. 335, 65 So. 481, 483. The case was governed by article 72 of the Constitution of 1898 and of 1913, which was exactly the same as section 12 of article 5 of the Constitution of 1921. The relator was appointed to office in November, 1912, to fill a vacancy occurring during a recess of the Senate. There was an extra session of the Legislature in 1913, and the Governor failed to send in the name of the relator for confirmation by the Senate. The court said:

"Again, although relator was appointed to an office by the Governor of the state, under article 157 of the Constitution, the Senate has rejected him. The Governor failed to send relator's name to the Senate. Article 72. Relator admits that he has not been confirmed by the Senate, which was in session in 1913.

He has been rejected; and he has no interest in any office."

It was said by the author of the reasons given in the Dowling Case for refusing to grant a so-called rehearing on this point that the ruling in State ex rel. Duffy v. Goff, that the relator's commission had expired by the failure of the Governor to send in his name for confirmation by the Senate at the extra session of the Legislature, was "not only illogical and inconsistent, but is rank obiter dictum," because the court also held in that case that the statute, which the defendant relied upon, had abolished the office. It may as well be said of any decision in which the court gives two or more reasons for its decision that whatever the court says as to either reason for the decree is "rank obiter dictum." Accordingly, in every criminal case in which the court sustains or overrules more than one bill of exceptions, the reasons for the decree are "rank obiter dictum." I do not understand how any one can subscribe to such a doctrine. Besides, we must bear in mind that, in the four cases which I have referred to, this court was construing an article of the Constitution, article 61 of the Constitution of 1868, retained as article 69 in the Constitution of 1879, and as article 72 in the Constitution of 1898 and in the Constitution of 1913, and as section 12 of article 5 of the Constitution of 1921; and the presumption is that the court proceeded with the utmost deliberation in its interpretation that the words *"next session"* meant, not *next regular session,* but, literally, *next session,* whether special or regular session. The presumption is also that the Constitutional Conventions of 1879, 1898, 1913, and 1921, in repeating the language of article 61 of the Constitution of 1868, did so with actual knowledge of the interpretation which this court had put upon the words "next session," and with the deliberate intention that the meaning of the words should not be changed.

The ruling in the present case is a departure from the policy which has been closely observed by this court from its beginning, and which is written plainly and rigidly in sections 11 and 12 of article 5 of the Constitution, that the Governor shall not make any appointment of a public officer without the advice and consent of the Senate, except to fill a vacancy occurring when the Senate is not in session, in which contingency the commission which the Governor may grant *shall expire at the end of the next session.* The meaning of that language admits of no doubt or ambiguity; and its authors have double-riveted its meaning, so to speak, by declaring that, if the Governor fails to send in the name of a person appointed to office during a recess of the Senate, for confirmation, at the next session, such failure shall be equivalent to a rejection of the appointment, and the appointee shall not be eligible for reappointment to the same office during another recess of the Senate, or without the advice and consent of the Senate. In spite of that language, it is said in the prevailing opinion in this case that it is *optional* with the Governor either to send in the names of his recess appointees or to withhold them from the Senate at its next session if that session happens to be a special session of the Legislature. Of course, it is optional with the Governor either to send in the names of his recess appointees or to withhold them at the next session of the Senate, whether it be a special session or a regular session; but he cannot avoid the consequence of his exercising his option or privilege in that respect.

Strange to say, the author of the reasons for refusing to grant a so-called rehearing of this question in the Dowling Case also said that the Dowling Case was like the case of

State ex rel. Sims v. Young, 137 La. 102, 68 So. 241; and he also called attention to the fact that the opinion in that case was written by Mr. Justice O'Niell. He said (page 924 of 167 La., 120 So. 599): "If you substitute Dr. O'Hara for Sims, and Dr. Dowling for Young, you have in State v. Young, 137 La. 102, 68 So. 241, a case identical with the present case." The two cases were not alike in any respect except that they were both suits for possession of a public office. There was not an issue, or question either of law or of fact, that was tendered for decision in the Dowling Case, that had been decided or presented in the Young Case. The contention of the defendant in the Young Case was that the relator, Sims, who was appointed to fill a vacancy occurring during a recess of the Senate, could not take possession of the office until the Senate should meet and confirm the appointment. It was not contended that the commission of Sims had expired, for there had been no session of the Legislature subsequent to the appointment of Sims. No such issue could possibly have been tendered in that case. But in the Dowling Case the only question tendered for decision, in that respect, was whether the relator's commission had expired after the decision of this court was rendered, because of the fact that the Senate had met and adjourned, in special session, and the Governor had failed to send in the name of the relator for confirmation. It was not contended by the defendant in that case, either in the original hearing or in the application for a rehearing, that a person appointed to a public office to fill a vacancy occurring during a recess of the Senate could not take possession of the office until the Senate should meet and confirm the appointment. The only contention made by the defendant in the original hearing, in that respect, was that the statute (Act No. 126 of 1928) which put an end to the defendant's term of office was unconstitutional, for the seven reasons set forth in the defendant's answer to the suit. I hope sincerely that any one who will be patient enough to read the dissenting opinion which I am now writing will be studious enough to read also the opinion which I wrote in the Young Case and in the Dowling Case, and the reasons which were given by the four justices who refused to grant a so-called rehearing in the Dowling Case. I say that only four justices concurred in the reasons for refusing a so-called rehearing of this question in the Dowling Case, because Mr. Justice St. Paul, who is now absent because of illness, dissented from the opinion that it was optional with the Governor either to send in or to withhold the names of his recess appointees for confirmation at the next session of the Senate when that session happened to be a special session of the Legislature.

The prevailing opinion rendered in this case is contrary to that which has been rendered in every jurisdiction in which this important constitutional question has been decided, as far as my research and the researches of the attorneys in this case have disclosed. I have already quoted from State ex inf. Major, Attorney General, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006, 22 R. C. L. p. 432, and People ex rel. Knight v. Blanding, 63 Cal. 333; and I shall refer now to the other decisions which have been cited.

In the matter entitled In re Advisory Opinion to the Governor, 64 Fla. 16, 59 So. 782, where the Governor of Florida asked the court for an opinion as to whether he should submit his recess appointments to the Senate for confirmation at a special session, that being the next ensuing session, or whether the appointments which he had made during the recess of the Senate would remain in force

until the end of the next regular session, under constitutional provisions similar to those of the Constitution of Louisiana, the court answered the question thus:

"When the Legislature is convened in extra session by executive proclamation, it is the duty of the Governor under the Constitution to transmit to the Senate, for its action thereon, appointments to the offices of circuit judge, state attorney, and judge of the criminal court of record that have been made since the adjournment of the last session of the Senate.

"Under Const. art. 4, § 8, relating to extra sessions of the Legislature, and providing that it shall transact no 'Legislative business' other than that for which it is especially convened, or which is called to its attention by the Governor, except by a two-thirds vote of each house, the confirmation by the Senate of executive appointments to office cannot be regarded as 'legislative business,' since such confirmation is not essentially legislative in its nature, and does not require the co-operation of the House of Representatives. * * *

"The Constitution clearly contemplates joint action by the Governor and Senate in the matter of these appointments, when possible and as soon as possible, and the provision for a locum tenens until the Senate may act requires the construction that the Senate should be permitted to act when next in session, however convened."

In State v. Williams, 20 S. C. 12, where the statute (Gen. St. 1882, § 91), provided that "the governor shall appoint, by and with the advice and consent of the senate, if in session, and, if not in session, subject to the approval of the senate at its next session," the court held that the words "next session" meant the next session in fact, whether regular or special session.

State v. Boucher, 3 N. D. 389, 56 N. W. 142, 21 L. R. A. 539, is cited in 22 R. C. L. p. 433, § 84, as authority for the proposition, viz.:

"If, on the expiration of the term of a public officer, an appointment of a successor is made by the governor but is not confirmed by the state senate, as required by a law of this type, such successor does not obtain the right to enter on the duties of the office, but the former incumbent may hold over until a successor is properly appointed and confirmed."

There is no good reason for a departure from this court's repeated and literal interpretation of the words "next session," as used in article 61 of the Constitution of 1868 and in article 69 of the Constitution of 1879 and in article 72 of the Constitution of 1898 and of 1913 and in section 12 of article 5 of the Constitution of 1921, which interpretation is universally recognized as the correct interpretation.